STATE, by complaint, *vs.* JAMES WOODS, appellant.

Cumberland. Decided September 14, 1878.

*Intoxicating liquors. Words,—appurtenances.*

The designation in the warrant of a certain dwelling-house and its appurtenances occupied by the defendant, is sufficient to authorize the officer to search a stable on the same lot about ten feet in the rear of his store and dwelling-house, the store being under his dwelling-house and a part of it, and the stable being used by him for storing coal and carriage and depositing ashes and stores, though tenants of his used the stable in connection with him. *State* v. *Burke,* 66 Maine, 127, followed and approved.

One who has been convicted, under R. S., c. 27, § 35, is subject to a heavier penalty on any subsequent conviction for a similar offense, committed since c. 215 of the laws of 1877 took effect, though the prior conviction was before; the punishment under § 4, c. 215, being not for what was done before the passage of the law, but for the subsequent violation of it with the increased penalty in view.

ON EXCEPTIONS from the superior court.

SEARCH AND SEIZURE COMPLAINT AND WARRANT, before the municipal court of the city of Portland, in 1877, for violation of the liquor law. The premises to be searched were designated as " the dwelling-house and appurtenances occupied by said Woods, a part of which said dwelling-house is used for purposes of trafficking by said Woods."

The liquors were seized in a barn or stable on the premises of defendant, situated about ten feet in the rear of his store and dwelling-house, the store being under the dwelling-house and a part of it. The government offered evidence tending to show his use and occupation of the stable in connection with his store and dwelling-house. Defendant admitted that he used the stable for purpose of storing his coal and carriage, and depositing ashes and stores, but testified, without being contradicted on that point, that certain tenants of his, who occupied another building in the rear of the stable on his premises, also had access to the stable and used it in connection with him; he denied all knowledge and ownership of the liquors. The liquors were concealed in a hiding-place under the stable, access to which was had by means of a door opening from the inside, where it was hasped at the end of a stall,

skillfully concealed, and the officers testified that there was a well-worn path from the hiding-place to defendant's store. The jury took a view of the premises.

One of the questions submitted to the jury was as to whether or not the stable was appurtenant to defendant's store and dwelling-house, his counsel contending that it was not, and that the search of the stable was unauthorized.

The defendant admitted that he was the owner of all the buildings referred to, but claimed that the stable was not sufficiently described to authorize the officer to search it; government claimed that it was appurtenant, and on that point the presiding judge gave instructions similar to those stated in the opinion in *State* v. *Burke*, 66 Maine, 127, closing as follows : " If, under the evidence in the case, the barn falls within the rule, then it would be an appurtenance of the house, and the search would be justified. You have seen the premises and heard the testimony, and your judgment of the matter should control."

The defendant also objected to the admission of the record of the previous conviction alleged in the complaint, on the ground that section 4, chapter 215, laws of 1877, does not apply to offenses committed before it went into effect, and if it was intended so to apply, to that extent, it is *ex post facto*. The judge overruled the objection and admitted the evidence of the conviction in December, 1876 ; and the defendant alleged exceptions.

*M. P. Frank*, for the defendant.

*C. F. Libby*, for the state.

BARROWS, J. This is a complaint under R. S., c. 27, § 35, dated June 27, 1877, alleging the keeping and depositing of intoxicating liquors intended for unlawful sale by the defendant, on the 26th of said June and the day of the date of the complaint, " in the dwelling-house and its appurtenances occupied by him, situated," etc., . . " a part of which said dwelling-house is used for the purposes of traffic by said Woods ; " with a further allegation that the defendant was convicted December 20, 1876, of a violation of the provisions of the same chapter and section of the revised statutes.

Defendant excepts to certain instructions touching the sufficiency of the warrant to authorize the search of the stable, where the liquors were seized, as an appurtenance of the defendant's dwelling-house.

The facts and evidence stated in the exceptions bring the case clearly within the doctrines laid down by the court in *State* v. *Burke*, 66 Maine, 127; and the instructions complained of were conformable to those doctrines. Further consideration upon this point is needless. A reference to the previous decision is sufficient.

The defendant also excepts to the admission of the record of the previous conviction alleged in the complaint, claiming that section 4 of chapter 215, laws of 1877, does not authorize the imposition of the increased penalty upon subsequent convictions after the first offense, where the first conviction took place before chapter 215 took effect, and, if it was intended to have that effect, it would be, to that extent, *ex post facto*.

We think neither of these positions is tenable. The import of the section referred to in the statute of 1877 is unmistakable. The penalty for the first commission of the offense described in section 35 of chapter 27 of the revised statutes remains unchanged. From and after the time when chapter 215 of the laws of 1877 took effect, he who had been convicted of the offense described in R. S., c. 27, § 35, was warned that he laid himself liable to a heavier penalty upon every subsequent conviction in case he should thereafterwards repeat the offense. The defendant must suffer the penalty prescribed by the statute of 1877 for what he did after it became a law. It is not easy to see how the intention of the legislature that every subsequent repetition of the offense should be visited with a heavier punishment where the party charged had been previously convicted under R. S., c. 27, § 35, could be more plainly expressed. Nor is the law liable to objection as *ex post facto*. The offender is punished, not for what he had done before the statute of 1877 took effect, but for his subsequent violation of the law with the increased penalty before his eyes.

Whether, under like circumstances and conditions, a law should

be regarded as *ex post facto*, because it prescribed an increase of punishment upon a second conviction of compound larceny, was one of the questions before the court of Massachusetts in *Ross's Case*, 2 Pick. 165, and the decision was adverse to the prisoner. This decision is referred to with·approval by Shaw, C. J., in *Plumbly* v. *Commonwealth*, 2 Met. 413, 415. And the doctrine of both these cases on this topic is expressly commended in the opinion of the Virginia court of appeals in *Rand's Case*, 9 Gratt. 738.

We find no substantial support for the defendant's positions, either in principle or authority.

*Exceptions overruled.*

APPLETON, C. J., WALTON, VIRGIN and LIBBEY, JJ., concurred.