## DAVE JONES v. STATE.

No. A-1537.   Opinion Filed June 28, 1913.

(133 Pac. 249.)

1. **CONSTITUTIONAL LAW—Ex Post Facto—Punishment.** The act of the Legislature providing that upon a second conviction for a violation of the prohibitory liquor law a higher punishment shall be inflicted is a reasonable classification which the Legislature had the power to make, and it is not ex post facto, although by its terms it may be enforced against one whose former conviction occurred before its passage.

2. **WITNESSES—Hearsay Evidence—Impeachment—Supporting Testimony.** When the credibility of a witness is attacked, it may be supported by evidence that the witness had made similar statements about the time of the occurrence testified to; but, in the absence of any attack upon the credibility of a witness, his statements made out of court cannot be introduced against a defendant, and when so introduced upon a material question in a close case constitutes reversible error.

3. **CONSTITUTIONAL LAW—"Ex Post Facto Law."** An "ex post facto law" is one which renders an act punishable in a manner in which it was not punishable when it was committed.

(Syllabus by the Court.)

*Appeal from County Court, Craig County;*
*S. F. Parks, Judge.*

Dave Jones was convicted of violating the prohibitory liquor law, and he appeals. Affirmed.

*James S. Davenport,* for appellant.

*Smith C. Matson,* Asst. Atty. Gen., and *C. Caldwell,* Co. Atty., for the State.

FURMAN, J.   This is a conviction for violating section 16 of the Act of March 11, 1911 (Sess. Laws 1911, c. 70) relating to the illegal sale of intoxicating liquors. Said section is as follows:

"For the second conviction for the violation of any of the provisions of this act, the penalty shall be a fine of not less

than five hundred dollars nor more than one thousand dollars, and by imprisonment for not less than six months nor more than twelve months, and it shall be mandatory upon the trial judge, in cases where any one has been convicted under any of the provisions of this act, to pronounce sentence within ten days from the date of conviction."

The information in this case is as follows:

"In the Name and by the Authority of the State of Oklahoma: Now comes C. Caldwell, the duly qualified and acting county attorney in and for the county of Craig, state of Oklahoma, and gives the county court in and for the said Craig county, state of Oklahoma, to know and be informed that heretofore one Dave Jones was indicted in the district court of the Second judicial district of the state of Oklahoma, sitting in and for Craig county, Okla., for the crime of selling whisky to one Dennis Holland in the county of Craig and state of Oklahoma, on the 10th day of October, 1910, and the said indictment against the said Dave Jones for said charge was by order of said district court transferred to the county court in and for Craig county, Okla., for trial and final disposition, and that the said Dave Jones on the 11th day of April, 1911, personally appeared in open court in the said county court of Craig county, Okla., and entered his plea of guilty to said charge contained in said indictment, and was on the same date sentenced by said court to serve a term of 30 days in the county jail of Craig county, Okla., at hard labor, and to pay a fine of $50 and costs and that thereafter the said Dave Jones, did, in the county of Craig, in the state of Oklahoma, on, to wit, the 21st day of July, in the year of our Lord, one thousand nine hundred and eleven, and anterior to the presentment, hereof commit the crime of selling bartering, giving away, and furnishing spirituous, vinous, fermented, and malt liquor in the manner and form as follows, to wit: That the said Dave Jones in the county of Craig, and in the state of Oklahoma, on the 21st day of July, 1911, did knowingly and unlawfully sell, barter, give away, and otherwise furnish one pint of spirituous liquor, one pint of vinous liquor, one pint of fermented and one pint of malt liquor to William Hunt, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the state of Oklahoma. C. Caldwell, County Attorney."

The jury returned the following verdict:

"We, the jury duly impaneled and sworn to try the above-entitled cause, do upon our oaths find the defendant guilty of having been once convicted of violating the provisions of the prohibitory law of the state of Oklahoma, prior to the 21st day of July, 1911, as charged in the information. And we, the jury impaneled and sworn to try the above-entitled cause, do upon our oaths find the defendant guilty as charged in the information. F. M. Collins, Foreman."

Appellant was by the court sentenced to 12 months' imprisonment and to pay a fine of $500.

In his brief counsel for appellant says:

"Section 16, p. 165, Sess. Laws 1910-11, can never be held by any court to authorize an increased penalty for the violation of the prohibition law, where the alleged first offense was committed under some pre-existing law."

Counsel for appellant did not make any argument or cite any authorities in support of the position assumed. The contention of counsel for appellant is plausible upon its face, and as a matter of first impression we were inclined to agree with the position assumed upon the ground that the first offense having been committed prior to the enactment of the law could not constitute an element of an offense committed after the passage of the law. It is a well-settled rule of law that criminal statutes cannot have a retroactive effect, and cannot prescribe punishment for acts committed before their enactment. Neither can subsequent legislation increase the punishment for past offenses. But upon further reflection and a critical analysis of the statute, we find that the first conviction is in no sense of the word an element of the second offense. The statute does not attempt to inflict any additional punishment for the first offense. The punishment is exclusively for the second offense. The second offense is complete within itself without reference to any acts which occured before the enactment of the statute. When the second sale was made appellant knew of his previous conviction, and he was bound to take notice of the law. The first conviction is simply a fact

which must be taken into consideration in fixing the punishment for the second offense, which was committed after the passage of the act. It simply requires that the court or jury in fixing the punishment for the crime committed after the passage of the law shall consider the past conduct of the defendant. In other words it provides one punishment for ordinary offenders and a higher punishment for incorrigible offenders, and was intended to protect society from the continuous depredations of confirmed criminals. That the Legislature has the power to make such a classification cannot be denied. In this position we are supported by the letter of the statute and the philosophy of the law.

We find a very able discussion of this question in the case of *Ex parte Gutierrez,* 45 Cal. 430, as follows:

"In 1872 the petitioner was convicted of the offense of petit larceny—a misdemeanor. On the 1st day of January, 1873, the present Penal Code went into effect, containing a provision, in substance, that any person convicted a second time of the crime of petit larceny shall be deemed guilty of a felony, and punished by imprisonment in the state prison. The commitment here sets forth, in the usual form, that the prisoner committed the offense of petit larceny on the 13th of January, 1873, and also that he had been previously convicted of the like offense, and thereupon directs that he be held to answer for felony. It was suggested, rather than urged for the prisoner, that it was not the intention of the Penal Code to take into account, for this purpose, a conviction of petit larceny, occurring anterior to the time at which the Code itself went into effect. There is, however, nothing to be found in the phraseology of the act which can be brought to the support of this view. Those who enacted this law have certainly made no distinction upon its face, between convictions suffered before and like convictions suffered after the 1st day of January, 1873. Nor is there any principle of interpretation which will avail to restrain the general words of the statute for the benefit of the prisoner in this instance. The established rule of the common law undoubtedly was that statutes of the character of the one now under consideration should receive a strict construction in favor of him upon whom a penalty was to be inflicted; but this rule

has been abrogated by the Code, which has constituted itself, in this respect, its own interpreter. Section 4 of the Penal Code is as follows: 'The rule of the common law, that penal statutes are to be strictly construed, has no application to this Code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects, and to promote justice.'

"1.  I have remarked already that there is nothing to be found in the terms or language employed in the act which distinguishes between a first conviction of petit larceny and anterior to January 1, 1873, and such an one had after that day. The object of the Code, evident in this respect, was to protect society from the further depredations of an abandoned class of criminals infesting the cities and larger towns in the state, whose ordinary avocation is larceny, and whose severest punishment has heretofore been confinement in idleness and for inconsiderable periods of time in the county jail, escaping of course, the graver, though well deserved, consequences ensuing upon a conviction of a felony. Neither the purpose of justice nor a consideration of the object to be effected will, in my opinion, justify me in giving the Code the interpretation in this respect claimed by the prisoner.

"2.  It is next claimed for the prisoner that the Penal Code, sought to be so applied here as to constitute the petit larceny charged against him a felony, is *ex post facto,* and so prohibited by the federal Constitution. Article 1, sec. 10. Undoubtedly if the purpose of the Code were to aggravate the punishment of a crime committed before the Code took effect, it would be obnoxious to the objection taken. But such is not the case. The offense to be punished by imprisonment in the state prison was one *committed since the Code took effect.* By the rule announced in the Code any person in the situation of the prisoner—that is, any person who had already been convicted of the offense of petit larceny—who should again, and subsequently to the taking effect of the Code, commit the offense of petit larceny, is to be deemed a felon, and punished by imprisonment in the state prison. The act to be punished is, however, only that act done by the prisoner after the Code took effect, and therefore in no sense can the Code be said to become *ex post facto* when applied to the case of the prisoner. The true principle in this respect is well expressed by Judge Cooley in his invaluable work upon Constitutional Limitations,

as follows: 'And a law is not objectionable as *ex post facto* which, in providing for the punishment of future offenses, authorizes the offender's conduct in the past to be taken into account, and the punishment to be graduated accordingly. Heavier penalties are often provided by law for a second or any subsequent offense than for the first, and it has not been deemed objectionable that in providing for such heavier penalties the prior conviction authorized to be taken into account may have taken place before the law was passed. In such cases it is the second or subsequent offense that is punished, not the first,' etc.

"The adjudicated cases are believed to be uniform in support of the principle of constitutional law, as thus enunciated in the text-book referred to. Among these cases are *Rand v. Commonwealth,* 50 Va. 738, in the Supreme Court of Appeals of Virginia, and *Ross' Case,* 2 Pick. [Mass.] 165, in the Supreme Judicial Court of Massachusetts. Neither of these cases are at all distinguishable in its circumstances (so far as those circumstances relate to the point in hand) from the case of the prisoner here. In each of them the statute under which the severer punishment was imposed was enacted *intermediate the first conviction and the commission of the second offense.*

"It results that the prisoner must be remanded; and it is so ordered. "(Italics ours.

The Supreme Court of New York took the same view of this question in the case of *People v. Raymond,* 96 N. Y. 39 as follows:

"That no offense can be considered a second offense under the Penal Code unless it appears that the first offense charged is a crime under such Code by reason of section 719, and the first offense here was before the Code went into operation, is a contention without adequate foundation. The first offense was not an element of or included in the second, and so subjected to added punishment, but is simply a fact in the past history of the criminal, which the law takes into consideration when prescribing punishment for the second offense. That only is punished."

In the case of *State of Iowa ex rel. Gregory v. Jones* (D. C.) 128 Fed. 626, we find the following:

"The contention of the prisoner is that the statute of 1898, as construed and enforced against him, is an *ex post facto* law. The entire strength of the argument is that the last 15 years of the imprisonment imposed upon him were because of crimes committed prior to the enactment of the statute of 1898. And while it is not material, he seeks to strengthen his claim that not only were his three crimes committed prior to the enactment of that statute, but that he had wholly served the terms of imprisonment imposed for those three crimes before the action of the Legislature of 1898. Prior to the argument of the case at bar, and before reading the decisions of the courts upon the question, it seemed quite plausible that Gregory, under the judgment now assailed, is being imprisoned for 5 years or less for the stealing of the mule in Pottawatomie county in 1899, and for 15 years or more for his larcenies prior to 1898. But plausible as this statement is, it is only plausible, and not a correct statement. It is unsound. Const. U. S. art. 1, sec. 9, provides that Congress shall not enact an *ex post facto* law, and by section 10 of the same article it is provided 'no state shall * * * pass any *ex post facto* law.' And what is an *ex post facto* law? In *Fletcher v. Peck,* 6 Cranch, 87, 3 L. Ed. 162, Chief Justice Marshall said: 'An *ex post facto* law is one which renders an act punishable in a manner in which it was not punishable when it was committed.' A better, or more accurate definition has not been given. From this definition it is seen that the punishment provided for when the crime was committed is the punishment that must be imposed. If no punishment was then provided for, none can be imposed by subsequent legislation. If punishment was then provided for, subsequent legislation cannot be enacted, increasing the punishment, and such legislation can only refer to subsequent crimes. The punishment can be lessened, but never increased, as against any one, for a crime already committed. No more beneficent provision is found in the Constitution for the protection of the individual, and it must be and will be enforced on behalf of the bad citizen or criminal as well as for the good citizen.

"But the learned counsel of the relator concedes that the statute of 1898 is within the Constitution, and therefore valid, but claims that it is only valid when it relates to other convictions committed after the enactment of the statute. But the authorities are against him, whatever might be urged if

it were an original question. *Kelly v. People,* 115 Ill. 583, 4 N. E. 644, 56 Am. Rep. 184, is in a measure in point, although it does not go to the extent as claimed. The federal constitutional provision was not relied on nor discussed in that case. But the case of *Commonwealth v. Graves,* 155 Mass. 163, 29 N. E. 579, 16 L. R. A. 256, is in point. In that case the offense pleaded as a prior conviction was committed prior to the enactment of the statute under which the convictions appealed from were enacted. And it was held that the statute, as thus construed, was not an *ex post facto* law. *Sturtevant v. Commonwealth,* 158 Mass. 598, 33 N. E. 648, is of like holding. And so is *In re Miller* [110 Mich. 676], 68 N. W. 990 [34 L. R. A. 398, 64 Am. St. Rep. 376]. *Blackburn v. State,* 50 Ohio St. 428, 36 N. E. 18, is squarely in point. In that case the defendant was indicted for breaking and entering a building with intent therein to commit larceny April 4, 1890. The indictment also pleaded two former convictions of felonies, one of June, 1881, and the other of October, 1886. The statute was of date May, 1885. So that one of the prior offenses, and convictions as well, was of a prior date to the enactment of the statute. The prisoner urged the point that the statute, as applied to him, was an *ex post facto* law. The jury finding him guilty as charged, and finding the allegations of the indictment as to the prior convictions to be true, he was sentenced to the penitentiary for life. The judgment was affirmed by the Ohio Supremee Court.

"*Moor v. State of Missouri,* 159 U. S. 673, 16 Sup. Ct. 179, 40 L. Ed. 301, by argument, at least, is in point. The indictment charged felony as of date May 26, 1893. It also set forth a prior conviction of a felony. The date of the enactment of the statute in question is not given, and therefore it will be assumed that it was prior to the commission of the first offense. The defendant, by reason of the crime charged and the former conviction, was sentenced to prison for life. So far as appears from the opinion, it was not urged that the statute was an *ex post facto* law. At all events, that question was not discussed in the opinion. The point decided was that the statute was not in conflict with the fourteenth amendment. Therefore it cannot be said that the case is an authority on the point now before this court. But the fact is that by argument, at least, much of what is said by the Chief Justice

is persuasive on the question now presented, and is worthy of being considered in the case at bar.

"It is always with satisfaction that quotations are made from Cooley's Constitutional Limitations—one of the few really great text-books. That work (7th Ed., at page 383) recites: 'And a law is not objectionable as an *ex post facto* which, in providing for the punishment of future offenses, authorizes the offender's conduct in the past to be taken into the account, and the punishment to be graduated accordingly. Heavier penalties are often provided by law for a second or any subsequent offense than for the first, and it has not been deemed objectionable that, in providing for such heavier penalties, the prior conviction authorized to be taken into the account may have taken place before the law was passed. In such case it is the second or subsequent offense that is punished, not the first; and the statute would be void if the offense to be actually punished under it had been committed before it had taken effect, even though it was after its passage.'

"From these authorities it will be seen that a prisoner is convicted and sentenced for the one crime charged, and is not convicted on account of or for the prior crime or crimes. But he is convicted of the crime charged, and as belonging to a class of incorrigibles, for whom punishment does no good —a class into which the accused has voluntarily brought himself, and as against whom society has the right to be protected by placing him for the balance of his life where he cannot prey upon the people. In this case it was fortunate for Gregory that his sentence was for 20 years, instead of for life, as it could have been—fortunate because at the end of 20 years, with four convictions behind him, he will have one more chance in life.

"A law is also *ex post facto*, and therefore void, if it alters the rules of evidence, and allows less or different testimony than the law required at the time of the commission of the offense in order to convict the accused. It is therefore urged that the statute changes the rules of evidence, and is therefore void. But this point has already been covered.

"The prisoner was convicted for stealing the mule in Pottawatomie county in the year 1899, after the enactment of the statute, and in stealing the mule, thereby, by his own act, he brought himself into a class of thieves, as distinguished

from those not yet classified by judicial records. As already observed, the statute in question covers cases wherein the accused has been twice before convicted.

"The indictment against Gregory recited that he had been three times before convicted, and the trial jury, by special verdicts, found the allegations to be true. And because of such allegations and special verdicts it is claimed that the judgment is void. This cannot be so. It is a familiar, and perhaps elementary, rule of criminal law and pleading that the greater includes the lesser, the same as in mathematics. If he had been three times before convicted, as, of course, he had been twice before convicted, then the indictment would have been good, and the special verdicts valid, if innumerable convictions had been pleaded and proven. Two prior convictions would bring the accused into the class, and 20 prior convictions would do no more. But all this was a question for the Pottawatomie district court, subject only to review by the Iowa Supreme Court, and with which this court has no concern."

The case of *State v. Adams* will be found in 132 Pac. 171, of June 9, 1913. The Supreme Court of Kansas passed upon this very question and said:

"Under page 165, Laws 1911, providing a punishment for persistent violators of the liquor law, it is not necessary that the former conviction which aggravates the second offense should occur subsequent to the date upon which the statute became effective. * * * Former conviction of crime is a sufficient basis for the classification of offenders with respect to the severity of the punishment they shall receive. 'The propriety of inflicting severer punishment upon old offenders has long been recognized in this country and in England. They are not punished the second time for the earlier offense, but the repetition of criminal conduct aggravates their guilt and justifies heavier penalties when they are again convicted.' *Graham v. West Virginia,* 224 U. S. 616, 623, 32 Sup. Ct. 583, 585 (56 L. Ed. 917)."

The following authorities are to the same effect: *Com. v. Graves,* 155. Mass. 163, 29 N. E. 579, 16 L. R. A. 256; *Rand v. Com.,* 50 Va. 738; *People v. Butler,* 3 Cow. (N. Y.)

347; *Ross' Case,* 2 Pick. (Mass.) 165; *Com. v. Hughes,* 133 Mass. 496; *Com. v. Marchand,* 155 Mass. 8, 29 N. E. 578.

Second.    The state placed William Hunt and Cecil Hunt on the stand as witnesses, and they testified to having purchased whisky from appellant at the time mentioned in the information.    The state then placed D. A. Reed on the stand who testified that he was a policeman in the city of Vinita. He then proceeded to testify as follows:

"Q.    Do you know William Hunt and Cecil Hunt?    A. I know them now, I never seen them before that time.    Q. I will ask you if you saw them on or about the 21st day of July, 1911?    A. Yes. sir.    Q.    Just tell the court and jury about it.    (The defendant objects to this witness telling anything about William Hunt and Cecil Hunt, unless they were in company with this defendant, for anything that might have happened after the transaction could not be admissible in an offense of this defendant, which objection is overruled, to which ruling of the court the defendant duly excepted).    A.    Well, on the 21st day of July, along between 3 and 4 o'clock I think it was, I was about probably 40 or 50 steps of Mr. Tittle's cab barn, when these two boys passed me going south on Second street.    They stopped at Mr. Tittle's barn, and they were around there probably five minutes, maybe a little longer, I didn't just time them, and finally they went south on Second street to Delaware, and after turning the corner on Delaware I went down north on Second and around on Canadian and met them on First street.    They went south, and I went north and west.    They went west and north.    We met on First street. I asked them if they had any whisky.    Mr. Hunt said he had a pint.    (The defendant moves to strike the conversation between this witness and William Hunt from the record, on the ground that it fails to disclose that the defendant was present when this conversation took place, and the conversation between this witness and the witness, William Hunt, in the absence of the defendant, would not be admissible against the defendant, which objection is by the court overruled, to which ruling of the court the defendant excepts. Motion denied by the court, to which ruling of the court the defendant duly excepted.)    Q.    Did you see whether or not he had any whisky?    A.    Yes, sir.    Q.    What did he have?    A. A pint of whisky.    (The defendant objects to that, and moves

to strike the answer from the record as not in any way con-
necting this defendant with the pint of whisky, which objection
and motion are overruled by the court, to which rulings of
the court the defendant duly excepted.)   Q.   Which one had
the whisky?   A.   William Hunt."

Counsel for appellant strenuously objects to this testi-
mony upon the ground that it is hearsay, and that it is per-
mitting statements made by the witness Hunt out of court,
and not in the presence of appellant, to be introduced in evi-
dence against appellant.   If the court had allowed any state-
ments made by the witness Hunt to the effect that he had
purchased the whisky found in his possession from appellant,
then this objection would have been good, for the law is that
statements made by a witness out of court are not admissible
in evidence against the defendant, unless the credibility of
such witness is attacked.   Under these conditions the state-
ments made by a witness out of court, about the time of the
transaction with reference to which he testifies, may be in-
troduced, not as evidence of the guilt of a defendant, but
solely for the purpose of sustaining the credibility of such wit-
ness.   But this is not the case before us.   The witness Reed
did not testify to any statements made by the witness Hunt
as to when, where, or from whom he had obtained the whisky
which was found upon his person.   The testimony simply shows
that the witness Reed had watched the Hunt boys, and that
upon their coming from the place where appellant was, he
arrested them and found whisky in their possession.   There
was no issue as to the truthfulness of Reed's testimony, and
we think that the fact that William Hunt was found in pos-
session of whisky just after leaving the place where the ap-
pellant was, was a proper circumstance for the consideration of
the jury.

We find no error in the ruling of the court, and the
judgment is affirmed.

ARMSTRONG, P. J., and DOYLE, J., concur.