SAM ALLEN HILL V. STATE.

No. 26,140. March 4, 1953.

*Jones, Herring & Jones, by Perry L. Jones,* Austin, for appellant.

*Bob Long,* District Attorney, *Fred B. Werkenthin,* Assistant District Attorney, Austin, and *George P. Blackburn,* State's Attorney, Austin, for the state.

MORRISON, Judge.

The offense is driving while intoxicated, as a second offender; the punishment, two years.

In view of our disposition of this case, a recitation of the facts is not deemed necessary.

Bill of Exception No. 1 complains of the overruling of appellant's motion to quash the indictment. A brief recitation of the chronology of events is necessary in order to understand the contention raised in the motion.

1. Appellant was convicted in the county court of Travis County in 1947 for the misdemeanor offense of driving while intoxicated.

2. Appellant was convicted in the district court of Travis County in 1949 for the felony offense of driving while intoxicated, the 1947 misdemeanor conviction being plead to make the offense a felony and to confer jurisdiction on the district court.

3. After having served this term in the penitentiary, the appellant was again indicted in 1952 for the felony offense of driving while intoxicated; and again the same 1947 misdemeanor conviction was alleged in order to make the offense a felony and to confer jurisdiction on the district court.

Appellant's contention is that the rule in Kinney v. State, 79 S. W. 572, would prevent the re-use of the 1947 misdemeanor, since it had successfully been used in the 1949 felony conviction.

This court has not held the rule in the Kinney case applies to Article 802b, P.C., and we do not now feel inclined to so hold. To the contrary, we have held in Broughton v. State, 148 Tex. Cr. R. 445, 188 S. W. 2d 393, and Clifton v. State, 156

Tex. Cr. R. 655, 246 S. W. 2d 201, that said article is not an enhancement of punishment statute but creates a new and independent crime of the grade of felony, an essential element of which is that the person charged has previously been convicted of a misdemeanor offense of driving while intoxicated. The additional allegation of the prior misdemeanor conviction thus vests the district court with jurisdiction. It is only in cases arising under Articles 61-64, P. C., that the rule in the Kinney case, and those which follow it, apply. We hold that the prior use of the misdemeanor conviction does not prevent its subsequent re-use for the same purpose and that such subsequent re-use does not violate the constitutional prohibition against placing an accused twice in jeopardy. This court, as now constituted, is not inclined to extend the rule in the Kinney case, supra.

Appellant's Bill of Exception No. 2 relates to another motion to quash, predicated upon the assumption that, prior to the amendment of Article 802b, P. C., in 1951, a prior misdemeanor conviction might be successfully used only once in charging the felony offense of driving while intoxicated. This court has not so held, and, therefore, appellant's contention as to the ex post facto effect of the 1951 amendment passes out of consideration.

Bill of Exception No. 3 asserts that the 1951 amendment changes the punishment prescribed by the 1941 act and contends that, since the punishment was different when appellant committed the 1947 offense, a conviction under the 1951 amendment, in which a 1947 offense was alleged in order to give the court jurisdiction, would be giving ex post facto effect to the 1951 amendment.

Appellant cites from Thacker v. Commonwealth, 16 S. W. 2d 448:

"Our opinions so holding, and which are in complete accord with those from other jurisdictions upon the subject, are based upon the proposition that it is incompetent for the Legislature to provide for an increased punishment for a second conviction, when the first offense of which appellant was convicted was committed before the enactment of the statute so prescribing."

We now analyze the two acts:

That portion of the 1941 act which prescribes the punishment reads as follows:

". . . shall be guilty of a felony; and upon conviction be punished by confinement in the penitentiary for any term of years not less than one (1) nor more than five (5)."

That portion of the 1951 amendment which prescribes the punishment reads as follows:

". . . be guilty of a felony; and upon conviction shall be punished by a fine of not less than One Hundred ($100.00) Dollars nor more than Five Thousand ($5,000) Dollars or confinement in the county jail not less than ten (10) days nor more than two (2) years, or by both such fine and imprisonment, or by confinement in the state penitentiary not to exceed five (5) years."

If the punishment provided by the 1951 amendment had been materially increased, we would be inclined to agree with appellant's contention. But we do not so construe the change. Between 1941 and 1951, all citizens were charged with the knowledge that if they violated the driving while intoxicated statute, they would receive certain misdemeanor punishment on their first conviction, and on the second they might be assured of a stay in the penitentiary if convicted.

Since 1951, no such warning or assurance exists. All citizens are now charged with the knowledge that on a second conviction they may go to the penitentiary or they may be treated more leniently and receive only a fine or jail sentence.

This we feel to be the only logical interpretation to be given to the rule expressed in the Thacker case and, accordingly, overrule appellant's contention in this respect.

Bill of Exception No. 7 registers appellant's objection to the introduction into evidence of the results of the Harger breath test for alcohol on the grounds that such called for expert testimony and that the witness was not an expert.

Appellant's counsel admitted that the witness Barnett was competent to give the test, but stoutly questioned his ability to calculate and translate for the jury the reading from the machine into terms of the alcohol content of the blood. He points out that, in order to do this, the witness had to rely upon a chart sent with the machine, and which he did not understand. His contention was that the use of such a chart by the witness, who could not explain the same, constituted hearsay evidence.

He further objected on the grounds that the machine was not shown to have been under the supervision of an expert during the period of time current to the giving of the test in the instant case.

From the testimony of officer Barnett, we briefly summarize the operation of the machine. The suspect is required to blow into a balloon. The breath from the lungs thus captured is allowed to expel itself through a tube containing a mixture of potassium permanganate and sulphuric acid until a certain color is reached. By a measure of the water displaced by the breath which has passed through this tube, it is determined how much air was required to create the color above described. This amount is determined from a reading of a calibrated scale.

Appellant does not question, and neither do we, officer Barnett's ability to conduct the test to this point.

The number read from the calibrated scale must then be calculated and translated into a percentage of alcohol in the blood (this is the result of the test objected to by the appellant), and this percentage must then be shown to indicate a state of intoxication or non-intoxication. These last two steps are the ones appellant questions the qualification of the witness to take.

The witness readily admitted that he did not understand the formula for such calculation and translation and relied entirely upon a chart which came with the machine. Insofar as it established an evidentiary fact, such chart was clearly hearsay. If, on the other hand, the witness had been able to withstand cross-examiantion on the formula, then he would be an expert witness; and the question of hearsay would have passed out of the case under the doctrine that reference by an expert to a known authority to support his opinion does not constitute an introduction of the medical textbook or authority as original evidence.

To us, there are two other serious deficiencies in the state's case. We may secure important assistance in discussing them by referring to the opinion of this court in McKay v. State, 155 Tex. Cr. R. 416, 235 S. W. 2d 173, and to the record in that cause. The McKay case was the first case in which this court approved the introduction into evidence of the results of the Harger breath test. (Recently, in Jones v. State, No. 26,072,

261 S. W. 2d. 161), we cited further authority in support of our holding in the McKay case.)

We authorized the introduction of the evidence of the officer who gave the test upon a showing that Dr. Beerstecher, a Ph. D. in biochemistry, had trained the officer and maintained a periodic supervision over his work, the operation of the machine, and the chemicals that were used in making the test. From the testimony of Dr. Beerstecher in the McKay case, we quote, in part, as follows:

"Even with apparently qualified operators, it is recommended by scientists, such as I am, that there be checks run on these operators to make sure that there is not a mental lapse or a variance in the manner of giving these tests, in order that the precise and meticulous mathematical standard, which is required, be adhered to. Without precise mathematical standard, the whole calculation can be thrown out of line."

"If the operator does not give the test properly, if he varies in it, then everything is out of kelter. The answers that might be indicated are worthless unless there has been exact accuracy in all of the procedure necessary to endeavor to reach a conclusion that would be shown by the machine."

"I provide them with a solution of sulphuric acid and potassium permanganate. They are correct when I turn them over to the City Hall."

In the case at bar, however, officer Barnett testified that Dr. Beerstecher had left the city some three years prior to the giving of the instant test and that all the tests given within that period of time, including the test in the instant case, had been given without any supervision of an expert.

Officer Barnett testified further that he bought the chemicals from a pharmacist, but had no way of knowing if such chemicals actually received were of the strength ordered, or required, to accurately operate the machine. He also testified that if the solution or proper proportion of the chemicals in the machine was not exactly as required, the test would not be accurate.

It is then apparent that the proof in the case at bar is lacking in what we consider to be three essentials to the admissibility of evidence as to the results of such tests, as follows:

1. Proof that the chemicals were compounded to the proper percentage for use in the machine.

2. Proof that the operator and the machine were under the periodic supervision of one who has an understanding of the scientific theory of the machine.

3. Proof by a witness who was qualified to calculate and translate the reading of the machine into the percentage of alcohol in the blood; that is, one who could eliminate the hearsay evidence mentioned earlier.

We felt that the type of supervision shown in the McKay case was abundantly sufficient and are convinced that some type of scientific supervision should be shown in order to make the results of the test admissible in evidence.

This court is anxious to move along with the progress of science, but we must zealously guard the accused and the public against the use of so-called scientific evidence which does not bear the stamp of approval of scientists generally.

So concluding, the judgment of the trial court is reversed and the cause remanded.