## JOE GOMEZ V. STATE

No. 27,615. May 18, 1955
Motion for Rehearing Denied (Without Written Opinion)
June 25, 1955

*William E. Davenport,* San Angelo, for appellant.

*Guilford L. Jones,* District Attorney, Big Spring, and *Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

Upon an indictment charging the possession of marihuana, a narcotic drug, and alleging a prior conviction "of the less than capital offense of sale of a narcotic drug, an offense of like character and of the same nature as that hereinbefore charged against him in this cause," appellant was found guilty by the jury and assessed a term of 20 years in the penitentiary.

Appellant urges that the indictment is not sufficient to charge a second offense under the Uniform Narcotics Drug Act. (Art.

725b V.A.P.C.) and to support the enhanced punishment provided in Sec. 23 of said act as amended in 1953.

He contends that the trial court erred in submitting the enhanced punishment of not less than 5 nor more than 25 years confinement in the penitentiary provided in Sec. 23 of said act as amended, and says that the indictment was drawn under Art. 62 P.C., which provides for a different enhancement of punishment.

There were no exceptions or objections reserved to the court's charge.

In determining whether or not the indictment supports the conviction the material inquiry is not whether the allegations are appropriate in charging the violation of some other statute, but whether the indictment contains the allegations necessary to show the commission of the offense which is submitted to the jury and for which he is convicted.

The same rule applies to allegations of the indictment made for the purpose of securing an enhanced punishment.

The question, therefore, is not whether the allegations of the indictment are appropriate to Art. 62 P.C., but whether they are sufficient to sustain a conviction for violation of Art. 725b V.A.P.C. with the enhanced punishment for a second conviction as provided in Sec. 23 of the act as amended.

In order to secure enhancement of punishment as a second offender under Sec. 23 of Art. 725b, as amended in 1953, it was necessary that the state allege and prove that the accused violated a provision of the Uniform Narcotic Drug Act after he had been convicted for a prior violation thereof. It was also necessary that the indictment be so drawn as to inform the accused of the basis of the state's claim for enhancement.

The indictment made no reference to the Uniform Narcotic Drug Act but alleged the prior conviction of appellant on or about February 10, 1944, for the sale of a narcotic drug, setting out the cause number, the style of the case and the court wherein the conviction was had.

The sale of a narcotic drug being a violation of the Uniform Narcotic Drug Act at the time of the prior conviction, we find the allegations of the indictment sufficient.

It is to be remembered that the same degree of particularity required in alleging an offense is not required in alleging a prior conviction for the purpose of obtaining an enhanced punishment.

Appellant suggests that the enhanced punishment should not have been applied for the reason that the prior conviction occurred prior to the amendment of Sec. 23 providing for increase of punishment for a second, third and subsequent conviction.

We are cited to no decision of this court directly bearing on the question. There are authorities which appear to sustain appellant's contention. See State v. Kuhlman (Iowa) 220 N.W. 118.

We think that the better view is that followed by the Supreme Court of the United States in Gryger v. Burke, 334 U.S. 728, 732, wherein, speaking through Justice Jackson, the court said:

"Nor do we think the fact that one of the convictions that entered into the calculations by which petitioner became a fourth offender occurred before the Act was passed, makes the Act invalidly retroactive or subjects the petitioner to double jeopardy. The sentence as a fourth offender or habitual criminal is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one."

The case of Armstrong v. Commonwealth (Ky.) 198 S.W. 24, quotes from Cooley's Constitutional Limitations and cites Bishop's New Criminal Law, Vol. 1, Sec. 283, as well as cases from many states, including the following quotations:

"The question seems to have been squarely decided in Ex parte Gutierrez, 45 Cal. 429, wherein it was held that the section of the Penal Code of California which provides that one who has been convicted of the offense of petit larceny, who shall again commit the offense of petit larceny, is to be deemed guilty of a felony, is not ex post facto, within the meaning of the Federal Constitution, even when applied to one who committed the first offense prior to the taking effect of the Code. * * *

"In Jones v. State of Oklahoma, 9 Okla. Cr. 646, 133 Pac. 249, 48 L.R.A. (N.S.) 204, * * * 'The act of the Legislature providing that upon the second conviction for a violation of the prohibitory liquor law a higher punishment shall be inflicted is a reasonable

classification which the Legislature had the power to make, and it is not ex post facto, although by its terms it may be enforced against one whose former conviction occurred before its passage.' "

The Kentucky case of Thacker v. Commonwealth, 16 S.W. 2d 448, cited by this court in Hill v. State, 158 Texas Cr. R. 313, 256 S.W. 2d 93, appears to be in conflict with the case of Armstrong v. Commonwealth, supra, by the same court, and with the authorities cited therein.

It is contended that the state failed to prove that the defendant knew the cigarette he possessed contained marihuana. He directs attention to the fact that an exculpatory statement by appellant was offered by the state which was to the effect that he did not know whether the cigarette in question was marihuana or not, and the trial court charged the jury upon the necessity that the state disprove such statement. The prior conviction for sale of marihuana alleged in the indictment was properly proved.

W. F. Hendricks, employed by the Texas Department of Public Safety, testified that he went to Big Spring to work undercover on their narcotic problem and became acquainted with appellant at his beer tavern; that he talked with and visited appellant some 10 or 15 times; that he inquired of appellant regarding the obtaining of marihuana and as a result of such inquiry appellant furnished him with a cigarette on December 2, 1953. The cigarette was offered in evidence at the trial, and the testimony of a chemist shows that it contained cannabis sativa or the marihuana plant.

On cross-examination it was shown that appellant gave the witness another marihuana cigarette on another occasion.

The exculpatory statement was a part of the testimony of appellant given at a former trial, other portions of which were also offered by the state including the following:

"Q. And you served a term in the penitentiary for selling marijuana? A. Yes, sir.

"Q. About how many times did Hendricks ask you about marijuana? A. Well, every time he came in there, in the place. And he was around there quite a bit.

"Q. Did you ever give him a cigarette in that place of business? A. Yes, sir.

"Q. Where was it? A. It was right in the place.

"Q. Do you know when that was? A. No, sir, I don't.

"Q. Joe, I show you a piece of brown paper here that is marked on the envelope State's Exhibit 1. Have you ever seen that before that you know of? A. I am not sure of that.

\* \* \* \*

"Q. Did you ever give him a cigarette that looked anything like that? A. Well, I gave him a cigarette but I don't know whether it looked anything like that or not.

"Q. I see. Well, what kind of cigarette did you give him, Joe? A. I don't know what kind it was.

"Q. Well, is it an ordinary cigarette that the people smoke by rolling them theirselves, or describe it — was it a tailor-made cigarette or was it a cigarette with brown paper — do you know what kind of cigarette it was, Joe? Just tell the Jury now, Joe, exactly the truth about it. A. Well, it was a cigarette in brown paper.

"Q. It was a cigarette in brown paper. Was it a marijuana cigarette? A. I don't know.

"Q. Well, did you intend to give him a marijuana cigarette? A. Yes, sir.

"Q. Where had you gotten the cigarette? A. Bought it.

"Q. Well, what did you pay for it? A. Fifty cents.

\* \* \* \*

"Q. Okay, now. Let's get all of the other occasions when you had — when you fixed Hendricks up with cigarettes over in your cafe. That is a different deal, different date. Where did you get that marijuana? A. Bought it for him, same man.

"Q. Pedro? A. Yes.

"Q. How much did you pay him for that? A. Fifty cents.

\* \* \* \*

"Q. That's right. And what was this man selling marijuana doing in there? A. I don't know. It is colored people and Mexicans. They all live there. They drive in and out there.

"Q. You didn't happen to call the law that day you found out somebody was in there selling marijuana? A. No, sir, I didn't.

\* \* \* \*

"Q. In connection of the offenses set forth in these papers here,

2285, cause number 2285, for selling marijuana; and on that occasion back during the war when they had the soldiers stationed out here? A. Yes, sir.

"Q. That is not the only time you have been in the pen? A. No, sir."

In the light of the foregoing evidence, we would not be justified in overturning the jury's finding that appellant knew the cigarette in question contained marijuana.

The only remaining claim of error relates to the exclusion of that part of the cross-examination of a state's witness to the effect that he was under indictment for violation of the Federal Civil Rights Statute.

The trial court correctly declined to permit such testimony for impeachment purposes, the charge not having resulted in a conviction. Art. 732a, V.A.C.C.P.

No reversible error appears and the evidence is sufficient.

The judgment is affirmed.

MORRISSON, Judge, concurring.

I agree with the disposition of this case by my brother Woodley, but, in view of what we said in Hill v. State, 158 Texas Cr. Rep. 313, 256 S.W. 2d 93, I deem it advisable to explain my position. In the Hill case, we quoted from Thacker v. Commonwealth, 16 S.W. 448, and distinguished it from the case before us then. We did not follow the Thacker case, but, from the language of our opinion, it might be concluded that we were in accord with the holding of the Kentucky court in such case.

After a more exhaustive study of the question, we have concluded that the rule which we quoted and discussed does not represent the majority view and that the rule expressed by the Supreme Court of the United States in Gryger v. Burke, 334 U.S. 727, 732; and set forth in Judge Woodley's opinion, is a sounder rule and is followed by the Supreme Courts of the following States:

California—Ex parte Gutierrez, 45 Cal. 428.

Michigan—People v. Palm, 223 N.W. 67.

New York—People ex rel Berger v. Warden of the Workhouse, 163 N.Y.S. 910.

New Jersey—State v. Rowe, 181 A. 706.

Ohio—Sims v. Alvis, 98 N.E. 2d 76.

Massachusetts—Ross' Case, 2 Pick. R. 165.

Indiana—Kelley v. State, 185 N.E. 453.

Minnesota—State v. Zywicki, 221 N.W. 900.

Florida—Cross v. State, 119 So. 380.

New Hampshire—In re Moulton, 77 A. 2d 26.

Nebraska—Taylor v. State, 207 N.W. 207.

Louisiana—State v. Guidry, 124 So. 832.

Kansas—Cochran v. Simpson, Warden, 53 P. 2d 502.

Virginia—Rand v. Commonwealth, 50 Va. 738.

Maine—State v. Woods, 68 Me. 409.

Oklahoma—Jones v. State, 133 P. 249.