NO. 07-04-0497-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

MAY 9, 2005

_____

JERRY GLENN REYNOLDS, II,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE COUNTY COURT AT LAW NO. 2  OF LUBBOCK COUNTY;

NO. 2003-486,135; HON. DRUE FARMER, PRESIDING

_____

Before QUINN, REAVIS, and CAMPBELL, JJ.

Appellant, Jerry Glenn Reynolds, II, appeals his conviction for driving while intoxicated (DWI).  His seven issues involve the trial court's refusal to "suppress" evidence the State purportedly intended to offer at trial.  We affirm the judgment.

## *Background*

On September 20, 2003, at around 2:00 p.m., Trooper Michael Parker was working near Buffalo Lake outside of Lubbock where a festival attended by a number of college students was occurring.  He was parked on the side of the road when he observed a sport utility vehicle without a front license plate.  After stopping the vehicle, he asked appellant, who drove the SUV, to exit.  As appellant did, the officer smelled a moderate odor of

alcohol surrounding appellant and noticed that his eyes were red and glassy. When asked if he had anything to drink, appellant replied that he had a few beers at a campsite near the festival. The officer then had appellant perform field sobriety tests and undergo a portable breath test. Thereafter, he was arrested and transported to the Lubbock County jail. Upon arriving at that destination, he underwent an intoxilyzer test.

Prior to trial, appellant attempted to "suppress" the results of the sobriety and breath tests. The trial court denied his motions. As a consequence, appellant entered a plea of guilty and appealed the rulings.

### Issue One - Reasonable Suspicion for Detention

In his first issue, appellant argues that the trooper lacked reasonable suspicion to detain him for the purpose of conducting and subjecting him to field sobriety tests. We overrule the issue.

We review the trial court's ruling on a motion to suppress under the standard announced in *Johnson v. State,* 68 S.W.3d 644 (Tex. Crim. App. 2002) and *Guzman v. State,* 955 S.W.2d 85 (Tex. Crim. App. 1997). Thus, we give almost total deference to the trial court's findings of historical fact and review *de novo* the application of the law to the facts. *Johnson v. State,* 68 S.W.3d at 652-53. So too do we consider the totality of the circumstances in determining whether the officer had reasonable suspicion upon which to detain appellant. *Garcia v. State,* 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).

Appellant does not challenge the legality of the initial stop for operating a vehicle without a front license plate. Rather, he contends that his continued detention after being told that he would receive a warning was improper. We disagree. Before stopping appellant, the officer knew that an "all day" festival attended by many college students was

2

ongoing at Buffalo Lake, the venue from which appellant was leaving. Furthermore, after the stop, appellant emitted the odor of alcohol and had bloodshot eyes. And, when asked if he had been drinking, appellant admitted that he had drunk several alcoholic beverages while at a campsite in or near the festival's venue. These circumstances were enough to vest the trooper with reasonable suspicion to detain appellant and further investigate the possibility of his involvement in the criminal act of driving while intoxicated. *See State v. Brabson,* 899 S.W.2d 741, 749 (Tex. App.–Dallas 1995), *aff'd,* 976 S.W.2d 182 (Tex. Crim. App. 1998) (holding that reasonable suspicion to detain arose when the suspect honked his horn excessively and emitted a strong odor of alcohol); *Powell v. State,* 5 S.W.3d 369, 377 (Tex. App.–Texarkana 1999, pet. ref'd) (holding that an officer may continue the detention after an initial stop if he develops reasonable suspicion to believe that the detainee was engaged in criminal activity). Appellant's citation to our opinion in *Domingo v. State*, 82 S.W.3d 617 (Tex. App.–Amarillo 2002, no pet.) does not persuade us otherwise.

In *Domingo*, the only circumstance the officer relied upon to detain the suspect was the odor of alcohol on his breath. *Id.* at 621. We noted that the officer said nothing about the detainee's speech or eyes being abnormal. *Id.* Nor did the officer have any indication of the number of beers Domingo had consumed. Those missing indicia, however, are present here. Again, not only did appellant smell of alcohol but also he had bloodshot eyes and admitted to drinking several beers. Given this, our decision in *Domingo* does not control the outcome here.

### *Issue Two - Predicate for Admission of Breath Test Results*

In his second issue, appellant contends that the trial court erred in refusing to suppress the results of the intoxilyzer or second breath test. Suppression is warranted,

according to appellant, because the person who gave appellant the breath test did not understand its scientific theory. We overrule the issue.

Authority holds that the individual performing the test upon the suspect need not understand the scientific theory of the intoxilyzer. *Scherlie v. State,* 689 S.W.2d 294, 296-97 (Tex. App.–Houston [1st Dist.] 1985), *aff'd on other grounds,* 715 S.W.2d 653 (Tex. Crim. App. 1986). Rather, it need only be shown that the machine and its operator were under the periodic supervision of one who had an understanding of the scientific theory underlying the machine. *Hill v. State,* 158 Tex. Crim. 313, 256 S.W.2d 93, 96 (1953), *overruled on other grounds by Vasquez v. State,* 477 S.W.2d 629 (Tex. Crim. App. 1972); *Scherlie v. State,* 689 S.W.2d at 296-97. Moreover, appellant does not contend that the *Hill* standard was not satisfied; this may be so due to the record containing evidence upon which the trial court could have legitimately concluded that it was. Consequently, we hold that the trial court did not abuse its discretion when it rejected this ground of attack.

### *Issue Three - Suppression of Breath Test Results*

Appellant next argues that the results of the intoxilyzer or breath test should be suppressed because they were illegally obtained. They purportedly were so obtained because the trooper provided appellant with information beyond that prescribed by statute. The statutes involved are subsections one and two of §724.015 of the Texas Transportation Code.[1] We overrule the issue for the following reasons.

---

[1]They state that before requesting a breath specimen, an officer must inform the person that if he refuses to provide the specimen 1) evidence of the refusal may be admissible in a subsequent prosecution and 2) the person's driver's license will be automatically suspended for not less than 180 days whether or not the person is subsequently prosecuted as a result of the arrest. TEX. TRANSP. CODE ANN. §724.015 (1) & (2) (Vernon Supp. 2004-05)

4

First, the comments cited by appellant involve the trooper describing how taking a breath test may enhance appellant's release. None were admonitions about what could occur if appellant refused to submit to the test, and it is the latter type of utterances that are generally impermissible, not the former. *Erdman v. State*, 861 S.W.2d 890, 893-94 (Tex. Crim. App. 1993); *Sandoval v. State*, 17 S.W.3d 792, 795-97 (Tex. App.–Austin 2000, pet. ref'd).

Second, appellant says nothing, in his brief, about how the statements made by the trooper caused him to submit to the test. He simply argues that they were coercive. Yet, authority obligates him to not only show that statements in addition to those mentioned in §724.015 were made but also that there existed a causal connection between them and his agreement to undergo testing. *Sandoval v. State*, 17 S.W.3d at 796; *accord Collins v. State*, No 05-01-01177-CR, 2002 Tex. App. LEXIS 5554 at 17-18 (Tex. App.–Dallas 2000, no pet.) (not designated for publication) (so recognizing). Given this default by appellant, we must conclude that he did not carry his burden on appeal to show error.

### Issue Four - Rule 403 Objection

Appellant argues in his fourth issue that the trial court erred in overruling his pretrial Rule 403 objection to the admission of the intoxilyzer results.[2] Exclusion is allegedly warranted because the probative value of the results was substantially outweighed by the prejudice attendant to their admission. We overrule the issue.

The argument before us is founded upon the supposed lack of evidence establishing the pertinent retrograde extrapolation. That is, because the intoxilyzer test was performed

---

[2]Pursuant to Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. TEX. R. EVID. 403.

about an hour after appellant was first stopped, it allegedly was incumbent upon the State to tender evidence linking the results of the test to appellant's condition an hour earlier. If it did not, according to appellant, then the relevancy of the results would be substantially outweighed by the chance that they would mislead the jury into viewing them as indication that appellant was drunk at the time of the stop.

The problem with appellant's argument is twofold. First, he cites us to no authority holding that the State must satisfy the requirements of Rule 403 in a pretrial hearing. Again, the trial court addressed the dispute during a pretrial hearing, not during trial. Second, to sustain appellant's contention, we would have to assume that the State would or could not present evidence permitting the jury to engage in retrograde extrapolation at trial. That is, we would have to assume that the State could not cure the supposed defect if and when the cause was actually tried. Yet, we are unwilling to so speculate especially when the appellant himself fails to engage in such speculation. Indeed, while it may be that the deputies who testified at the pretrial hearings knew little of retrograde extrapolation, that does not permit one to reasonably infer that the State lacked access to an expert or other witness who could and would have supplied the requisite information at trial.

Simply put, the question of whether or not the admission of the intoxilyzer results violated Rule 403 was presented to the trial court somewhat prematurely and without complete development. And, because it was, we cannot say that the trial court abused its discretion in overruling appellant's attempt to "suppress" the intoxilyzer results at the time he attempted to do so.

### *Issues Five and Six - Horizontal Gaze Nystagmus Test*

In his fifth and sixth issues, appellant complains that the trial court should have suppressed the admission of the results of the horizontal gaze nystagmus (HGN) test because there was insufficient evidence illustrating that the trooper was certified to administer the test and to show that the test was properly administered and interpreted. We overrule the issues.

For an officer to testify as an expert on the administration of an HGN test, it need only be shown that he received from the State of Texas a practitioner's certification to administer the test. *Emerson v. State,* 880 S.W.2d 759, 769 (Tex. Crim. App. 1994); *Held v. State,* 948 S.W.2d 45, 51 (Tex. App.–Houston [14th Dist.] 1997, pet. ref'd). Here, Trooper Parker testified that he had been certified by the Texas Department of Public Safety since 1997. So too did he state that he received his training at the academy in Austin and through Texas A&M University. Moreover, the record illustrates that he also took a refresher course in 2003. We find this evidence sufficient to establish that the trooper was an expert, and reject appellant's contention that the trial court abused its discretion when refusing to hold otherwise.

As to the remaining allegation, appellant asserts that the evidence failed to show that the trooper administered the HGN test properly. This is so, he argues, because although the officer testified that he observed a total of six clues on the test, he failed to state what those clues were or specifically explain how appellant performed on the test. Authority holds that in administering the test, an officer must look for the following clues in each eye: 1) lack of smooth pursuit, 2) distinct nystagmus at maximum deviation, and 3) onset of nystagmus prior to 45 degrees. *Compton v. State,* 120 S.W.3d 375, 377 (Tex. App.–Texarkana 2003, pet. ref'd). Slight variations in the test do not render the evidence

7

inadmissible. *Id.* at 378. Here, the evidence illustrates that the trooper first inquired whether appellant wore contact lens. Then, he checked for equal pupil size and tracking by moving his finger all the way to appellant's left shoulder and then to the right. Next, he looked for smooth pursuit by making two passes with his finger during which he observed two clues. Then he checked for distinct nystagmus at maximum deviation. He described how that test was performed and stated he observed jerking of both eyes which also constituted two clues. Finally, the officer checked for onset nystagmus prior to 45 degrees and described how he did so. In all, he observed six clues. Thus, the officer described 1) how each test was performed, 2) what he was looking for (*i.e.* jerking movements), and 3) how he counted six clues. And, because he described what he was looking for and how he found six "clues," the trial court could have reasonably inferred that the "clues" to which he alluded were jerking motions. Given this, the trial court had before it reasonable basis to conclude that the requirements of *Compton* were satisfied.

Appellant does not point to any specific instances in which the officer failed to properly perform the tests. Instead, he seems to complain that the officer did not adequately report the results of those tests.[3] In support of that complaint, he cites to the DWI Detection and Standardized Field Sobriety Testing manual published by the National Highway Traffic Safety Administration which states that in order to secure a conviction, the "officer must be able to describe <u>how</u> the suspect performed on the tests, and exactly <u>what</u>

_____

[3]Appellant did not question the officer, at the hearing on the motion to suppress, about the matters at issue here.

8

the suspect did."[4]  (Emphasis in original).  Even assuming that this authority is properly before the court and that we may consider it, the testimony of Trooper Parker at the time it was given was not being offered to secure a conviction but rather to enable the trial court to determine whether the factfinder would be allowed to hear it.  We find no abuse of discretion here.

### *Issue Seven - Suppression of One-Legged Stand Test*

In his final issue, appellant contends the trial court should have suppressed the results of that portion of the field sobriety tests dealing with the one-legged stand.  He believes that suppression was warranted because the State did not establish the predicate for their admission.  We overrule the issue for it was not preserved.  That is, appellant argues before us that the evidence was inadmissible because the State did not satisfy the "first two prongs of the *Kelly* test in regard to the one-leg stand."  Yet, below he argued that it was inadmissible because the evidence failed to show that the ground was level when appellant was asked to stand on one leg.  Since the argument on appeal fails to comport with that mentioned below, the former was not preserved.  *Washington v. State,* 152 S.W.3d 209, 213 (Tex. App.–Amarillo 2004, no pet.).  Having overruled each issue raised by appellant, we affirm the judgment of the trial court.


                                        Brian Quinn
                                        Justice

Publish.

---

[4]This manual does not appear in the record before us although a copy is attached to appellant's brief. Appellant did not request either the trial court or this court to take judicial notice of the manual, although the trial court did inform appellant it was not necessary to offer it into evidence.

9