IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1086-05






JERRY GLENN REYNOLDS, II, Appellant



v.



THE STATE OF TEXAS


 




ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SEVENTH COURT OF APPEALS


LUBBOCK COUNTY





 Price, J., delivered the opinion of the unanimous Court.



O P I N I O N 



 The appellant pled guilty to and was convicted of the misdemeanor offense of driving
while intoxicated. He was sentenced to 150 days in jail, probated for twelve months, and a
fine of $500. On appeal to the Amarillo Court of Appeals, he challenged the trial court's pre-trial ruling that, had the case gone to trial, the State would have been permitted to introduce
evidence that the results of a breath test showed him to have a blood-alcohol level double the
legal concentration sufficient to support a conviction. The appellant argued that the test
results were inadmissible because the State was unable to show that the state trooper who
conducted it was familiar with the science and technology that underlie the test. In a
published opinion, the court of appeals rejected this argument. (1) We granted the appellant's
petition for discretionary review to examine this holding, which he contends is in conflict
with this Court's precedents. (2)

PROCEDURAL POSTURE


 A full recitation of the facts of the case is unnecessary to our disposition. (3) The
appellant filed several pre-trial motions seeking to ascertain whether the State would be
permitted to introduce evidence of the breath test results. At a hearing on those motions, it
was established that the arresting officer who administered the test, Department of Public
Safety (DPS) Trooper Parker, was a certified Intoxilyzer 5000 operator. (4) It was also
established that he had little or no understanding of the scientific principles behind the
machine. The State was able to produce another witness, however, who was a certified
technical supervisor for the Intoxilyzer 5000 and was responsible for overseeing the
particular Intoxilyzer 5000 that Trooper Parker operated. She was familiar with the science
and technology upon which it is based and had first-hand knowledge that it was maintained
and in good working order on the date Trooper Parker used it to test the appellant. The trial
court ruled that the breath test results would be admissible at trial. With that understanding,
the appellant later entered a guilty plea, subject to an appeal of the trial court's pre-trial
ruling.

 On direct appeal, the appellant argued that the trial court erred. He relied upon a line
of cases from this Court, culminating in Slagle v. State, in which we purportedly held that the
operator of an apparatus for testing alcohol concentration via a suspect's breath must be able
to demonstrate a working knowledge of the scientific theory behind the particular apparatus
before the results of the test will be admissible. (5) The court of appeals rejected this
contention, without even citing Slagle. Instead, the court of appeals expressly relied upon
the first in the same line of cases, Hill v. State. (6) In Hill, we held that, for the results of a
breath test to be admissible, the proponent need only demonstrate that the breath test operator
and his apparatus must be "under the supervision of one who has an understanding of the
scientific theory of the machine." (7) The appellant now argues that, by the time Slagle was
decided, the Court had implicitly overruled Hill, and the court of appeals therefore erred to
rely on it. We disagree, and find that the court of appeals' reliance on Hill was appropriate.

ANALYSIS


Hill versus Slagle


 In Hill, we articulated "three essentials to the admissibility of evidence as to the
results of [chemical breath] tests[.]" (8) The second "essential" was "[p]roof that the operator
and the machine were under the periodic supervision of one who has an understanding of the
scientific theory of the machine." (9) The appellant makes no argument that the testimony of
the supervisor in this case would not have satisfied this essential.

 In subsequent cases, the Hill articulation of the second essential was reworded,
beginning with French v. State. (10) There, the Court paraphrased the second Hill essential:
"the State must show . . . (2) the existence of periodic supervision over the machine and
operation by one who understands the scientific theory of the machine[.]" (11) This reworking
of the language could reasonably be read to require that the actual "operation" of the test be
performed by "one who understands the scientific theory" involved. But that is by no means
a necessary interpretation of the French paraphrase, (12) and in the context of the case it is clear
that the Court did not intend to change the Hill standard. The Court meant only to reiterate
the requirement that both the operator and machine be under the supervision of one who
understands the scientific principles involved. There was no intent in French to hold that the
operator must necessarily have such knowledge. (13) Unfortunately, the language of the Court's
paraphrase injected an ambiguity, and it is this ambiguity that the appellant attempts to
exploit in this case.

 Our ambiguous paraphrase of Hill's second essential was carried over into a number
of later opinions. (14) None of those cases involved an alleged failure of proof as to the
scientific knowledge of the operator of the testing apparatus, however, and thus, none
supports the proposition that this Court has ever unambiguously held that the operator of an
apparatus for testing breath for blood-alcohol concentration must understand the scientific
principle and/or technology underlying the particular test. Only Slagle unambiguously
phrases the second Hill essential in such a way as to require that the operator have the
requisite scientific knowledge. There, in purporting once again to paraphrase both Hill and
its ambiguous progeny, we said that "[a] predicate for the admissibility of the results of a
breathalyzer examination requires a showing that . . . (2) there has been periodic supervision
over the machine and the machine was operated by an individual who understands its
scientific theory[.]" (15) But Slagle did not involve any question about the admissibility of
breath test evidence. Indeed, the inaccurate paraphrase of the Hill line of cases occurs in a
footnote by which we meant only to illustrate an ancillary issue that Slagle had not raised on
appeal. As such it constitutes dictum, obviously lacking in precedential value. (16)

 In Harrell v. State, we held that the second Hill essential applies to determine the
admissibility of intoxilyzer evidence. (17) In articulating that second essential, we once more
carried forward the ambiguity that originated with French. (18) But we neither adopted the
erroneous articulation of the Slagle footnote, nor intended to adopt any deviation from the
predicate for admissibility we expressly found to have been "enumerated" in Hill. (19) We hold
that the law is, always has been, and will remain the same, viz: it is not a part of the predicate
for the admissibility of breath test results, including Intoxilyzer 5000 results, that the operator
of the apparatus himself understand the scientific and technological principles behind the
apparatus, so long as he is properly certified under the statute to operate it. (20)

The Kelly Criteria


 Furthermore, the Texas Rules of Evidence have not changed the law in this regard. 
In Hartman v. State, (21) a case specifically involving a challenge to the admissibility of
intoxilyzer results, we held that the standard for admissibility of scientific evidence derived
from Rule 702 of the Rules of Criminal Evidence, (22) as explained in Kelly v. State, (23) applies
equally to all scientific evidence, not just novel scientific evidence. Kelly held that scientific
evidence must meet three criteria to be considered sufficiently reliable as to be of help to a
jury: (1) the underlying scientific theory must be valid; (2) the technique applying the theory
must be valid; and (3) the technique must have been properly applied on the occasion in
question. (24) The appellant argues that, consistent with Kelly, the proponent of evidence of the
results of a breath alcohol testing apparatus must show that the operator of the apparatus has
a ready grasp of the sort of information he was required to know in order to become certified
as an operator in the first place. (25)

 We reject this contention. In the context of breath test results, the Legislature has
already determined that the underlying science is valid, and that the technique applying it is
valid as long as it is administered by individuals certified by, and using methods approved
by the rules of, DPS. (26) The fact of certification is sufficient to meet the Kelly criteria with
respect to the competence of the breath test operator. That the opponent of the evidence can
demonstrate that the operator has not retained all of the knowledge that was required of him
for certification is a circumstance that goes to the weight, not the admissibility, of the breath
test results.

 Harmonizing the Transportation Code and Rule 702, we hold that, when evidence of
alcohol concentration as shown by the results of analysis of breath specimens taken at the
request or order of a peace officer is offered in the trial of a DWI offense, (1) the underlying
scientific theory has been determined by the legislature to be valid; (2) the technique
applying the theory has been determined by the legislature to be valid when the specimen was
taken and analyzed by individuals who are certified by, and were using methods approved
by the rules of, DPS; and (3) the trial court must determine whether the technique was
properly applied in accordance with the department's rules, on the occasion in question.

 In a Kelly hearing, then, at which the results of a breath test are challenged, all the trial
court need do to satisfy its "gate-keeping" function is to determine whether the technique was
properly applied in accordance with the rules of DPS on the particular occasion in question. 
A peace officer such as Trooper Parker, who is certified by the DPS to operate the Intoxilyzer
5000, need not also be able to articulate the scientific principle behind the apparatus or the
technology implementing it in order to satisfy the Kelly criteria. As long as the operator
knows the protocol involved in administering the test and can testify that he followed it on
the occasion in question, he need not also demonstrate any personal familiarity with the
underlying science and technology. In short, nothing in Rule 702 or in Kelly calls for an
amendment of the second Hill essential, as it is properly understood and articulated. It is not
a prerequisite to the admission of the breath test results that the operator himself understand
the science and technology involved. (27)

CONCLUSION


 The judgment of the court of appeals is affirmed.


Delivered: October 18, 2006 

Publish
1. Reynolds v. State, 163 S.W.3d 808 (Tex. App.--Amarillo 2005).
2. See Tex.R.App.Proc. Rule 66.3(c).
3. See 163 S.W.3d at 810.
4. See Tex. Transp. Code § 724.016(a) ("A breath specimen taken at the request or order of
a peace officer must be taken and analyzed under rules of the [DPS] by an individual possessing a
certificate issued by the department certifying that the individual is qualified to perform the
analysis.").
5. Slagle v. State, 570 S.W.2d 916, 918 n.2 (Tex. Crim. App. 1978).
6. 163 S.W.3d at 811.
7. 158 Tex.Cr.R. 313, 319, 256 S.W.2d 93, 96 (1953), overruled on other grounds by Vasquez
v. State, 477 S.W.2d 629, 632 (Tex. Crim. App. 1972).
8. 256 S.W.2d at 96.
9. Ibid. See also, Fluitt v. State, 169 Tex. Cr. R. 259, 261, 333 S.W.2d 144, 146 (1960) (breath
test results admissible upon showing that State's witness "was qualified to test the chemicals,
provide the supervision over the operator, and translate the reading of the machine into percentage
of alcohol in the blood." (emphasis added)); Bumpus v. State, 509 S.W.2d 359, 361 (Tex. Crim. App.
1974) (repeating Hill essentials verbatim, and finding them satisfied by proof that officer who
administered breathalyzer test was certified, and properly supervised).
10. 484 S.W.2d 716 (Tex. Crim. App. 1972).
11. Id. at 719.
12. The ambiguity of this sentence lies in determining whether the prepositional phrase "by one
who understands the scientific theory of the machine" should be understood to modify the noun
"supervision," or the noun "operation." Both readings are awkward, but either is permissible. But
to read the prepositional phrase to modify "supervision" accurately paraphrases what the Court held
in Hill, while reading it to modify "operation" obviously changes Hill's second essential. Aside from
the ambiguity itself, nothing in French indicates that we intended such a change.
13. Indeed, while the Court did find a violation of the second Hill essential in French, the
violation it identified was a failure to prove that there was a supervisor who "periodically inspected
or exercised supervision over the machine used to administer the test." Ibid. The Court found no
failure of proof with respect to the operator of the machine.
14. E.g., Reyna v. State, 508 S.W.2d 632, 633 (Tex. Crim. App. 1974); Palafox v. State, 509
S.W.2d 846, 849 (Tex. Crim. App. 1974); Cody v. State, 548 S.W.2d 401, 404 (Tex. Crim. App.
1977).
15. 570 S.W.2d at 918 n.2 (emphasis added).
16. In Young v. State, 826 S.W.2d 141, 144, n.5 (Tex. Crim. App. 1991), a majority of the Court
observed (ironically, in a footnote) that it is "generally true" that footnotes constitute dictum. In any
event, Slagle's inaccurate paraphrase of the second Hill essential would constitute obvious dictum
even had it appeared in the text of our opinion, since it involved an articulation of a legal standard
that was not necessary, or even relevant, to our disposition of any issue in the case.
17. 725 S.W.2d 208, 209 (Tex. Crim. App. 1986).
18. That is to say, we held that part of the predicate for admitting the results of an intoxilyzer
test was proof of "the existence of periodic supervision over the machine and operation by one who
understands scientific theory of the machine[.]" Ibid. We expressly identified this in Harrell as the
Hill test for admissibility. Thus, as in French, it is apparent that the ambiguity was unintentional and
not meant to signal any requirement, not found in Hill itself, that the operator of the intoxilyzer must
have knowledge and understanding of the scientific principles by which the intoxilyzer detects
blood-alcohol concentration.
19. 725 S.W. 2d at 209. Indeed, the Court in Harrell found that the second and third Hill
essentials were satisfied, even though there was no showing in that case that the officer who
administered the intoxilyzer knew anything at all about the scientific principles involved. Instead,
he testified, as did Trooper Parker in this case, only that he was a certified intoxilyzer operator, and
then he simply described the procedure for operating it. Id. at 209. The Court specifically observed
that it was the supervisor's testimony, not the operator's, that satisfied the last two Hill
requirements. Id. at 210.
20. See note 4, ante.
21. 946 S.W.2d 60, 63 (Tex. Crim. App. 1997).
22. See former Tex. R. Cr. Evid. Rule 702; now Tex. R. Evid. 702.
23. 824 S.W.2d 568 (Tex. Crim. App. 1992).
24. Id. at 573.
25. 37 Texas Administrative Code § 19.7 (b) designates "the following hours and areas of
instruction" in any program for operator certification for breath alcohol testing:


 (1) three hours of instruction on the effects of alcohol on the human body;


 (2) three hours of instruction on the operational principles of the breath alcohol
testing instrument to be used. This instruction shall include:


 (A) a functional description of the testing method; and


 (B) a detailed operational description of the method with
demonstrations;


 (3) fives hours of instruction on Texas legal aspects of breath alcohol testing;


 (4) three hours of instruction on supplemental information which is to include
nomenclature appropriate to the field of breath alcohol testing;


 (5) 10 hours of participation in a laboratory setting operating the breath testing
equipment.
26. Tex. Transp. Code § 724.064 ("On the trial of a criminal proceeding arising out of an
offense under Chapter 49, Penal Code, involving the operation of a motor vehicle or a watercraft,
or an offense under Section 106.041, Alcoholic Beverage Code, evidence of the alcohol
concentration or presence of a controlled substance, drug, dangerous drug, or other substance as
shown by an analysis of a specimen of the person's blood, breath, urine or any other bodily substance
taken at the request or order of a peace officer is admissible."); see also Stevenson v. State, 895
S.W.2d 694, 696 (Tex. Crim. App. 1995) (post-Kelly case holding that scientific reliability of
intoxilyzer test is established so long as the proponent of evidence of the test results shows that the
provisions of what is now Section 724.016 of the Transportation Code were satisfied); Mireles v.
Texas Dept. of Public Safety, 9 W.W.3d 128, 131-32 (Tex. 1999) (statute mandating admissibility
of breath test evidence in license revocation proceedings satisfies Hartman/Kelly requirement for
reliability, because statute constitutes legislative determination that the underlying science and
technology are valid). 
27. The appellant does not contend that the State failed to show that the supervisor in this case
had an inadequate understanding of the relevant science and technology, nor does he challenge any
other aspect of the State's predicate under Kelly.