COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-108-CR

 

 

THE STATE OF TEXAS                                                         APPELLANT

 

                                                   V.

 

LEONARDO SANCHEZ AMAYA                                                 APPELLEE

 

                                              ------------

 

        FROM COUNTY
CRIMINAL COURT NO. 6 OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

 

I.  Introduction








Leonardo Sanchez Amaya was arrested for driving
while intoxicated (DWI) and subsequently consented to submit a breath
specimen.  Amaya subsequently filed a
motion to suppress the results of his breath test, claiming that he was not
properly warned of the consequences of providing a breath specimen.  Although a police officer gave Amaya a
printed Spanish version of the DIC-24 warnings to read, Amaya complains that he
was not properly warned of the consequences because the officer read the DIC-24
warnings in English rather than Amaya=s spoken
languageCSpanish.  The trial court granted Amaya=s motion
to suppress, concluding that Abecause
the statutory warning was not read in the Spanish language and we do not know
whether or not the Defendant could read the Spanish warning sheet, we have no
way of knowing if the Defendant understood, or at least substantially
understood what the officer was telling him.@  The State appeals from the trial court=s order
granting Amaya=s motion to suppress.  See Tex.
Code Crim. Proc. Ann. art. 44.01(a)(5) (Vernon 2006).

The primary issue we address is whether, in light
of the statutory provision that a person arrested for DWI is Adeemed
to have consented@ to submit to the taking of a
breath specimen, Amaya or the State bore the initial burden of proof at the
suppression hearing.  Because we hold
that Amaya bore the initial burden of presenting some evidence that his deemed
consent was involuntary, and because no evidence exists that Amaya=s
consent was involuntary, we reverse the trial court=s
suppression ruling.

II.  Factual and Procedural Background








Carol Lee Riddle, a detective with the Arlington
Police Department, testified that on January 11, 2004, she was working as a
uniformed patrol officer when she was dispatched to the scene of a major
accident at the intersection of Collins and Sanford.  When she arrived, she saw that the accident
involved two vehicles and she began her investigation.  During the course of her investigation, she
detected an odor of alcohol on Amaya=s
breath. She determined that Amaya had been driving one of the vehicles and was
under the influence of alcohol.  She
arrested him for the offense of DWI. 
Because Amaya spoke Spanish, Detective Riddle called for a
Spanish-speaking officer, but one was not available.

Detective Riddle transported Amaya to the jail
and again inquired whether any Spanish-speaking employee was available to
interpret for her.  She was informed that
Athroughout
the whole city and in the jail, we did not have a single Spanish-speaking
employee.@ 
So Detective Riddle took Amaya into the intoxilyzer room and attempted
to conduct a DWI interview to the best of her ability.  Detective Riddle speaks Spanish Aa little
bit . . . enough to do basic communications and to do some sobriety tests.@








After Amaya performed the horizontal gaze
nystagmus test, Detective Riddle gave him a copy of the DIC-24S, which
contained the required statutory warnings printed in Spanish.  Detective Riddle then read the DIC-24
warnings to Amaya in English and encouraged him to follow along on the printed
Spanish version.  She testified that
Amaya Aappeared
to be following along as I was reading it in English.  I showed him where to start, where I was
going to start reading on the form.  I
pointed it out to him on his Spanish copy, and I began reading in English.@  She then read another form to Amaya in
Spanish, which explained that he had the right to have a chemical test
performed by a certified technician.

Detective Riddle testified:

A.  And then, on there, in Spanish, there is
where you can ask for him to provide a breath specimen in Spanish, and I read
that in Spanish.  And then I allowed him
to read it.  And then he stated, AYes.@

 

Q.  So at that time, was it your impression that
the Defendant was able to read that part that you=re talking about in
Spanish?

 

A.  Yes.

 

Q.  And was it your impression that the Defendant
understood what he was reading?

 

A.  Yes.








The video tape recording from the intoxilyzer
room shows Detective Riddle communicating with Amaya in Spanish.  Throughout the DWI interview, Detective
Riddle repeatedly asks Amaya, AComprende?@  And each time Amaya responds, ASi.@  At one point before the breath test is
administered, Amaya asks a question in Spanish. 
Detective Riddle takes a printed Spanish form over to Amaya and points
to a particular place on the form.  Amaya
squats a little and appears to read out loud the Spanish language Detective
Riddle pointed to.  On the video tape,
Amaya agrees three times to provide a breath specimen.

At the conclusion of the motion to suppress
hearing, the trial court stated on the record,

because the statutory warning was not read in the
Spanish language and we do not know whether or not the Defendant could read the
Spanish warning sheet, we have no way of knowing if the Defendant understood,
or at least substantially understood what the officer was telling him. . .
.  I=ve
watched him very carefully reviewing the Spanish warning sheet.  I find no indication that he understands,
doesn=t
understand.  I can=t tell.
. . .  I can=t find
that there has been substantial compliance under the Gonzalez[1]
case, and therefore Defendant=s Motion
to Suppress the Breath Test is granted.

III. Standard of Review








A trial court=s ruling
on a motion to suppress evidence will not be set aside unless an abuse of
discretion is found.  Villarreal v.
State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); State v. Derrow,
981 S.W.2d 776, 778 (Tex. App.CHouston
[1st Dist.] 1998, pet. ref=d).  We must afford almost total deference to the
trial court=s determination of facts
supported by the record, especially when the findings are based on the
evaluation of the witnesses=
credibility and demeanor.  Guzman v.
State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

In reviewing the trial court=s
ruling, we apply a bifurcated standard of review.  Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000).  We give almost
total deference to the trial court=s determination
of the historical facts and conduct a de novo review of the trial court=s
application of the law to those facts.  Id.  The trial court is the sole finder of fact in
a motion to suppress hearing, and it may choose to believe or disbelieve any or
all of any witness=s testimony.  State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000).

IV.  Consent to Breath Test








Section 724.011 of the transportation code, the
implied consent statute, provides that a person arrested for suspected DWI is
deemed to have consented to providing specimens for a breath or blood
test.  Tex.
Transp. Code Ann. ' 724.011(a) (Vernon 1999).  An adult person arrested for DWI must be
warned that refusal to submit to a breath test will result in the following
consequences: (1) evidence of the refusal will be admissible against the person
in court, and (2) the person=s driver=s
license will be suspended for not less than 180 days.  Id.
'
724.015(1)‑(2) (Vernon Supp. 2006); Erdman v. State, 861 S.W.2d
890, 893 (Tex. Crim. App. 1993) (applying former version of section 724.015
imposing 90-day suspension).  The suspect
must likewise be informed of the possible consequences if he submits to the
test and the results of the test show a prohibited blood‑alcohol
level.  See Tex. Transp. Code Ann. '
724.015(3), (4).

A suspect=s
consent to a breath test must be voluntary. 
Turpin v. State, 606 S.W.2d 907, 914 (Tex. Crim. App. [Panel Op.]
1980) (applying former version of section 724.015).  For consent to a breath test to be deemed
voluntary, a suspect=s decision must not be the
result of physical pressure or psychological pressure brought to bear by law
enforcement officials.  See Thomas v.
State, 723 S.W.2d 696, 704‑05 (Tex. Crim. App. 1986) (recognizing
that consent to breath test is not voluntary if induced by physical force or
mental coercion); Schafer v. State, 95 S.W.3d 452, 455 (Tex. App.CHouston
[1st Dist.] 2002, pet. ref=d)
(recognizing that consent to breath test is not voluntary if induced by
misstatement of direct statutory consequences of refusal).  A suspect=s
decision to submit to a breath test must be his own, made freely, and with a
correct understanding of the statutory consequences of refusal.  Erdman, 861 S.W.2d at 893.

V.  Burden of Proof













The question here is whether the State or the
defendant who has been arrested for DWI bears the initial burden of proof on
the issue of the voluntariness of the defendant=s
consent to a breath test.  Because
section 724.011 provides that a person arrested for DWI is Adeemed
to have given his consent@ to the taking of a breath
sample, a statutory presumption of consent exists.  Rodriguez v. State, 631 S.W.2d 515,
516 (Tex. Crim. App. 1982).  In fact, the
presumption of consent is so strong that Aa person
who is dead, unconscious, or otherwise incapable of refusal is considered not
to have withdrawn the consent provided by Section 724.011.@  Tex.
Transp. Code Ann. ' 724.014 (emphasis added).  Thus, the defendant bears the initial
burden at the suppression hearing to show that evidence exists rebutting the
statutory presumption that he voluntarily consented to submit a breath
specimen.  See, e.g., Kelly v. State,
204 S.W.3d 808, 819 n.22 (Tex. Crim. App. 2006) (recognizing that defendant Ahad the
initial burden to produce evidence to support a finding that she did not
consent to Gosson=s blood draw@);[2]
accord Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005)
(recognizing that, in light of presumption of proper police conduct, defendant
bears initial burden of producing evidence to support finding of improper
police conduct such as proving that a search occurred without a warrant); Russell
v. State, 717 S.W.2d 7, 9‑10 (Tex. Crim. App. 1986) (same).  The party with the burden of proof assumes
the risk of nonpersuasion.  Kelly,
204 S.W.3d at 819.

VI.  Application of Law to the Present Facts

Thus, Amaya bore the initial burden of proof to
show that his consent to submit a breath specimen was not voluntary.  Amaya did not testify that he could not read
Spanish, nor did he call any family member or friend to so testify.  In short, Amaya points to no evidence that
his consent to submit a breath specimen was not voluntarily given.  This is not a case where extra-statutory
warnings were provided, purportedly inducing an involuntary consent.  See, e.g., Erdman, 861 S.W.2d at 893; Gette
v. State, 209 S.W.3d 139, 145 (Tex. App.CHouston
[1st Dist.] 2006, no pet.); Reynolds v. State, 163 S.W.3d 808, 811 (Tex.
App.CAmarillo
2005) aff=d, 204
S.W.3d 386 (Tex. Crim. App. 2006).  Nor
is this a case where the defendant refused to submit a breath specimen based on
inadequate warnings of the consequences of a refusal.  See, e.g., State v. Woehst, 175 S.W.3d
329, 332-33 (Tex. App.CHouston [1st Dist.] 2004, no
pet.); Lane v. State, 951 S.W.2d 242, 243 (Tex. App.CAustin
1997, no pet.); Jessup v. State, 935 S.W.2d 508, 511 (Tex. App.CHouston
[14th Dist.] 1996, pet. ref=d).








We afford almost total deference to the trial
court=s
determination that the evidence does not establish either that Amaya could or
could not read the Spanish version of the DIC-24 provided to him.  See Guzman, 955 S.W.2d at 89.[3]  But because it was Amaya=s burden
to point to some evidence rebutting the presumption arising from the deemed
consent statute, this finding C that
the evidence did not establish whether Amaya could or could not read the
Spanish DIC-24 form C required the trial court to
overrule Amaya=s motion to suppress.  Absent evidence that Amaya=s
consent to submit a breath specimen was not voluntary, Amaya failed to meet his
burden of proof.  Kelly, 204
S.W.3d at 819.  And Amaya bore the risk
of nonpersuasion on the issue, meaning that an absence of evidence rebutting
the statutory presumption of deemed consent required the denial of Amaya=s motion
to suppress.  See id.








Amaya=s
specific argument on appeal is that he was not properly warned of the
consequences of submitting a breath specimen because the statutory warnings
were not read to him in Spanish.  But the
video tape establishes that Officer Riddle did communicate with Amaya in
Spanish and did provide the Spanish version of the DIC-24 to Amaya, pointing
out to him the place where she would begin reading in English and asking him to
follow along.  Thus, absent evidence that
Amaya could not read the warnings set forth on the Spanish DIC-24S form
provided to him, the record demonstrates substantial compliance with section
724.015 of the transportation code.  See
Tex. Transp. Code Ann. '
724.015; Gonzalez, 967 S.W.2d at 458. 
The trial court=s finding that she could not
tell, one way or the other, whether Amaya was capable of reading the Spanish
DIC-24 warnings demonstrates that Amaya did not meet his initial burden of
proof concerning the voluntariness of his consent.  An ambiguous record will not rebut the
statutory presumption of deemed consent. 

We sustain the State=s fourth
point.

VII.  Conclusion

Having sustained the State=s fourth
point, we need not address the State=s
remaining issues.  See Tex. R. App. P. 47.1.  We reverse the trial court=s order
granting the motion to suppress and remand this case to the trial court.

 

 

SUE
WALKER

JUSTICE

 

 

PANEL B:   HOLMAN, WALKER, and McCOY, JJ.

 

PUBLISH

 

DELIVERED:  March 22, 2007











[1]In Gonzalez v. State,
this court held that warnings to a DWI suspect need not track the statutory
language verbatim, word-for-word.  967
S.W.2d 457, 458 (Tex. App.CFort Worth 1998, no pet.).  Substantial compliance is sufficient so long
as the warnings given do not include extra-statutory warnings.  Id.





[2]In Erdman, the court
of criminal appeals did not address the burden of proof issue because the State
noted in its appellate brief that it Aha[d] a burden of showing voluntary consent to an
intoxilyzer test.@  Thus, the court assumed without deciding
that, under former Article 6701 l-5, section 2, the State had the burden
of showing voluntary consent to a breath test. 
Erdman, 861 S.W.2d at 893 n.2. 
After making this assumption, the court of criminal appeals concluded
that the State had not met its self-assumed burden in light of evidence that
the trooper had given Erdman extra-statutory warnings that placed considerable
psychological pressure on him.





[3]See State v. Bryant, 161 S.W.3d 758, 760-61
(Tex. App.CFort Worth 2005, no pet.)
(recognizing that findings dictated into the record at the conclusion of a
suppression hearing are entitled to the same consideration as written findings
of fact and conclusions of law).