COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
|---|---|---|
| THE STATE OF TEXAS, | | No. 08-15-00176-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | County Court at Law |
| | § | |
| BALTAZAR SANCHEZ URIAS, | | of Pecos County, Texas |
| | § | |
| Appellee. | | (TC # 19978) |
| | § | |

## O P I N I O N

In this interlocutory appeal, the State complains that the trial court suppressed certain evidence in a DWI prosecution. We affirm the trial court's decision in part, but reverse in part.

### FACTUAL SUMMARY

On the evening of March 13, 2013, DPS Trooper Colby Jones was patrolling a farm to market road in Pecos County. He met up with Baltazar Urias, who was traveling in the opposite direction. Urias failed to dim his pickup truck headlights, which caused Trooper Jones to immediately make a U-turn and activate his overhead lights to initiate a traffic stop. Texas law prohibits leaving high beam headlights on within five hundred feet of an on-coming vehicle. TEX.TRANSP.CODE ANN. § 547.333(c)(1)(A)(West 2011). Urias proceeded some distance before turning onto a side road, and he then pulled off onto the shoulder.

Trooper Jones immediately smelled alcohol when Urias rolled down his window. Jones

informed Urias of the reason for the stop, obtained license and insurance information, asked Urias where he was coming from, and also asked how much Urias had had to drink. Urias replied that he had two to three beers and had come from "the shop." Trooper Jones had Urias step out of his pickup and stand in front of the DPS cruiser. The trooper again asked Urias how much and what he had to drink. Urias responded that he had two to three "Bud Lights." Trooper Jones asked whether he would find any open containers if he looked in the vehicle, to which Urias responded there "shouldn't be."

Trooper Jones then searched Urias' pickup without obtaining permission to do so. He found a partially consumed bottle of whiskey between the driver's side seat and door. The trooper then inquired again about the kind and size of the beer Urias had consumed, and how long it had been since his last drink. He asked Urias to rate his intoxication on a scale of one to ten, to which Urias responded "three." He then had Urias perform the standardized field sobriety test. Based on the number of positive clues from that test, Trooper Jones arrested Urias for DWI with an open container.[1]

The entire event was recorded on the DPS vehicle's dash-cam. The device begins recording and captures everything that occurs from two minutes before the overhead lights are turned on, and here it continued to record until Urias was taken to jail. Trooper Jones carried an audio recording device that also documents the conversations he had with Urias.

Urias filed a motion to suppress any physical evidence seized up until the time of the arrest. He separately filed a motion to suppress the videotape of the search, including the oral statements made on the videotape. Trooper Jones was the only witness to testify at the hearing.

---

[1] Driving while intoxicated is a Class B misdemeanor which generally carries a minimum term of confinement of 72 hours. TEX.PEN.CODE ANN. § 49.04(b)(West Supp. 2015). When the person operating the motor vehicle has an open container of alcohol in the person's immediate possession, the minimum term of confinement is increased to six days. *Id*. at §49.04(c).

2

The dash-cam video was also admitted into evidence. The trial court granted the motion and its ruling is embodied in eight findings of fact:

1. The Court finds that Trooper Jones lawfully stopped the Defendant BALTAZAR SANCHEZ URIAS in Pecos County on a public road for failing to dim his lights within 500 feet as required by law.

2. The Court finds that Trooper Jones detected the smell of alcohol when the Defendant rolled his truck window down and on the Defendant's breath after the Defendant had exited his vehicle.

3. The Court finds that the Defendant admitted to Trooper Jones that he had consumed two or three cans of Bud Light.

4. The Court finds that the Defendant denied that there were any open containers in his automobile.

5. The Court finds that Defendant did not consent to the search of the vehicle by Trooper Jones and that the search was a warrant less [sic] search.

6. The Court finds that during the search Trooper Jones found a bottle of whiskey hidden in the interior of the vehicle.

7. The Court finds that the search violated the Defendant's 4th Amendment right under the U.S. Constitution because officer [sic] did not have sufficient trustworthy facts amounting to probable cause to search the vehicle.

8. The Court further finds that the whiskey bottle should be suppressed due to this violation. The Court further finds that the remaining portions of the video including statements made by the Defendant and the video showing the Defendant performing the field sobriety tests should be and are suppressed as the "fruit of the poisonous tree.

The State filed then filed this appeal. We start with the framework for analyzing a ruling on a motion to suppress.

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex.Crim.App. 2010). That discretion is tested under a bifurcated standard of review as articulated in *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App. 1997). *See Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007); *Krug v. State*, 86 S.W.3d 764, 765

(Tex.App.--El Paso 2002, pet. ref'd). Under that bifurcated standard, we give almost total deference to the trial court's resolution of questions of historical fact and of mixed questions of law and fact that turn on the weight or credibility of the evidence. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex.Crim.App. 2013); *Derichsweiler v. State*, 348 S.W.3d 906, 913 (Tex.Crim.App. 2011). We review *de novo* mixed questions of law and fact that do not turn on credibility and demeanor. *Arguellez*, 409 S.W.3d at 662. We also review *de novo* whether the totality of the circumstances is sufficient to support an officer's reasonable suspicion of criminal activity. *Arguellez*, 409 S.W.3d at 663; *Kothe v. State*, 152 S.W.3d 54, 62 (Tex.Crim.App. 2004).

## ISSUES ON APPEAL

The State brings two issues for our resolution. In the first, it claims the trial court erred in suppressing the search of Urias' vehicle, including the bottle of whiskey found near the driver's seat. In the second, the State urges that the trial judge erred in suppressing the remaining portions of the video/audio tape, including that part which shows the field sobriety test.

## THE SEARCH OF THE VEHICLE

The State's first issue focuses on the search of the vehicle and the suppression of the whiskey bottle. The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede v. State*, 214 S.W.3d 17, 24 (Tex.Crim.App. 2007). A motorist's privacy interest in their vehicle, while less substantial than the home, is nevertheless important and deserves constitutional protection. *Arizona v. Gant*, 556 U.S. 332, 344-45, 129 S.Ct. 1710, 1720, 173 L.Ed.2d 485 (2009).

A search conducted without a warrant is *per se* unreasonable subject to a few specifically defined and well-delineated exceptions. *McGee v. State*, 105 S.W.3d 609, 615 (Tex.Crim.App. 2003). One of those is the "automobile exception." *Neal v. State*, 256 S.W.3d 264, 282

4

(Tex.Crim.App. 2008).  Under this exception, officers may conduct a warrantless search of a vehicle if there is probable cause to believe that it contains contraband.  *Keehn v. State*, 279 S.W.3d 330, 335 (Tex.Crim.App. 2009).  If the automobile exception applies, then the police may search "every part of the vehicle and its contents that may conceal the object of the search." *Neal*, 256 S.W.3d at 282, *quoting United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).  "Probable cause to search exists when there is a 'fair probability' of finding inculpatory evidence at the location being searched." *Neal,* 256 S.W.3d at 282.

The State points to five circumstances supporting its claimed probable cause:  Urias' failure to dim his headlight; the length of time it took Urias to stop; the smell of alcohol; Urias' admission of some drinking; and his self-rating as a "three" on a one to ten intoxication scale.[2] While we might agree that these observations support Trooper Jones transforming a routine traffic stop into a DWI investigation, none of the factors uniquely suggests the presence of an open container in the vehicle itself.  The circumstances only suggest that Urias imbibed alcohol, not that he did so in his vehicle.  He might have consumed the alcohol anywhere.

We compare these facts to *Harper v. State*, 349 S.W.3d 188, 192 (Tex.App.--Amarillo 2011, pet. ref'd), where an officer noticed the odor of alcohol on the driver and was affirmatively told by a passenger about an open container in the vehicle.  The odor of alcohol, plus an admission of some kind of open contained in the vehicle, were sufficient to support probable cause to search the car.  In contrast, Urias denied that there were any open containers in the vehicle (when asked, he said in perhaps a colloquial manner, that "there shouldn't be" any).  The

---

[2]  We note the self-rating occurred after the search was complete and accordingly it cannot support the probable cause for the search.  And for much the same reason, we do not consider another exception--search incident to arrest--because the search occurred well before the arrest was made and Urias was some distance from his vehicle. *See Gant*, 556 U.S. 332, 343, 129 S.Ct. 1710, 1719 (authorizing police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search).

5

trooper smelled the odor of alcohol when he spoke to Urias both while in the vehicle, and when Urias was outside the vehicle. He never smelled alcohol when the pickup was unoccupied. The odor would give the trooper cause to further investigate Urias, but not the pickup itself. Because the trooper had no unique basis to believe that an open container was in the vehicle, we agree with the trial court that the search of the pickup was improper. The trial court thus properly suppressed the whiskey bottle, and that portion of the video that depicts the search of the vehicle (and the statements made during that portion of the tape).

## THE REMAINING VIDEO AND APPELLANT'S STATEMENTS

The trial court also suppressed "the remaining portion of the video showing the search of the Defendant's Truck forward including the field sobriety test and all statements made by the Defendant . . . . " We first define what was actually suppressed and focus on four distinct pieces of evidence: the video from the point of the search forward; the field sobriety test itself; all statements made by Urias during the field sobriety test; and those statements he made from his arrest until he was finally booked into jail. As literally written, the trial court's order applies to particular segments of the video, defined to include the segments showing the field sobriety test and segments showing the statements made by Urias. That literal construction would leave untouched the results of the field sobriety test itself. We interpret the order in this literal fashion for three reasons.

First, the trial court's finding of fact more clearly limit the excluded evidence to the videotape alone, and not the results of the field sobriety test:

> The Court further finds that the whiskey bottle should be suppressed due to this violation. The Court further finds that the remaining portions of the video including statements made by the Defendant and the video showing the Defendant performing the field sobriety tests should be and are suppressed as the 'fruit of the poisonous tree.'

6

The finding thus focuses on the video, and not the underlying events being depicted. Moreover, had the trial court really intended to suppress the actual results of the field sobriety test, then it would have suppressed the State's exhibit one, which contains the written results of that test. [3] Second, the underlying motion never sought to suppress the results of the field sobriety test itself, and we assume the trial judge did not grant more relief than was requested. Finally, Trooper Jones, even without finding the bottle of whiskey, had sufficient reasonable suspicion to ask Urias to perform the field sobriety test. The trooper smelled alcohol on Urias' breath, and Urias had admitted to recently drinking. Urias' hedged his answers to how much he had been drinking (two or three, and when asked if had more, he said "I don't think so."). The trooper also noted that it took Urias a bit longer than usual to pull over. Existing Texas law would support that these factors alone were sufficient to ask Urias to perform a field sobriety test. We would not interpret the trial court's order as ignoring established case law.

Traffic stops are analyzed for Fourth Amendment purposes under the two part inquiry articulated in *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *See Kothe*, 152 S.W.3d at 63. Under this standard, we first examine whether or not the officer's decision to stop the vehicle was justified at its inception. *Whren v. United States*, 517 U.S. 806, 809-10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)(such a seizure is constitutionally "reasonable where the police have probable cause to believe that a traffic violation has occurred.") Next, we determine whether or not the officer's subsequent actions were reasonably related in scope to the circumstances that caused him to stop the vehicle in the first place. *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). In this case, the trial court expressly found

---

[3] This construction also follows from the "series-qualifier canon" which provides that "[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 147 (2012). Under this canon, the term "video" is the prepositive that modifies and thus limits everything in the series that follows it.

that the original justification for the stop--failure to dim the headlights--was a proper basis for the initial stop.

Under the second *Terry* prong, an investigative stop can last no longer than is necessary to effectuate the purpose of the stop. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex.Crim.App. 2004). In other words, if a driver is stopped for some traffic violation, once the police officer issues the citation, the motorist should promptly be released unless the officer develops a reasonable suspicion of additional criminal activity in the meantime. *Id*. But when the police develop reasonable suspicion of some additional criminal activity in the course of a stop and before the purpose of the stop is fulfilled, a continued detention may be justified until the new suspicion has been confirmed or dispelled. *See Perales v. State,* 117 S.W.3d 434, 439 (Tex.App.--Corpus Christi 2003, pet. ref'd). Here, the trial judge expressly found that Trooper Jones smelled alcohol and that Urias admitted to drinking some quantity of alcohol. The video shows this occurred before the traffic stop for the moving violation was resolved. Trooper Jones therefore had reasonable suspicion to continue the traffic stop to investigate whether Urias had been driving under the influence.

This continued detention must be carefully tailored to its underlying justification. *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325-26, 75 L.Ed.2d 229 (1983). The scope of the detention must be temporary and last no longer than necessary to effectuate the purposes of the stop. *Id.* Furthermore, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicions within a short period of time. *Id.* When a motorist exhibits outward signs of intoxication, the field sobriety test is a reasonable and least intrusive means to investigate that potential crime.

In *Arthur v. State*, 216 S.W.3d 50, 55-56 (Tex.App.--Fort Worth 2007, no pet.) a police officer pulled over a vehicle that was weaving out of its lane of travel and speeding. The driver admitted that she had been drinking, smelled of alcohol, was slow to roll down her window, and had slurred speech. Those circumstances were found sufficient to give the officer reasonable suspicion to detain the driver further and to administer a field sobriety test. Similarly in *State v. Rudd*, 255 S.W.3d 293, 300 (Tex.App.--Waco 2008, pet. ref'd) the court found the odor of alcohol and the driver's admission of drinking earlier that day sufficient to merit the additional intrusion of a field sobriety test. *See also Reynolds v. State*, 163 S.W.3d 808, 810-11 (Tex.App.--Amarillo 2005), *aff'd,* 204 S.W.3d 386 (Tex.Crim.App. 2006)(officer's knowledge of nearby festival, odor of alcohol, bloodshot eyes, and admission of some drinking sufficient to warrant field sobriety test); *Stoutner v. State*, 36 S.W.3d 716, 719 (Tex.App.--Houston [1st Dist.] 2001, pet. ref'd)(strong odor of alcohol, admission of drinking sufficient to warrant field sobriety test).

It seems clear to us that the results of the field sobriety test itself were not the subject of the suppression order, (and if it they were, the trial court would have erred in excluding them). That conclusion makes the State's second issue an easy call. The only remaining question, then, is whether the act of videotaping the field sobriety test and what followed was somehow caused by, or related to, the search of the vehicle such that it became the "fruit of the poisonous tree." We find no such connection between the two.

Urias argued below, as he does here, that the balance of the videotape and any later statements he made are "fruits of the poisonous tree" and must also be excluded. Under that doctrine, evidence derived directly or indirectly from illegal governmental activity is excluded as trial evidence. *See Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d

441 (1963). The court in *Crosby v. State,* however, reminds us that "not all indirectly acquired evidence must be suppressed. Essentially, assuming that a Fourth Amendment violation did occur, the only indirectly acquired evidence that should be suppressed is that which was acquired by an exploitation of the unconstitutional intrusion." 750 S.W.2d 768, 780 (Tex.Crim.App. 1987).

This view comports with Article 38.23 which requires the exclusion of evidence "obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas." TEX.CODE CRIM.PROC.ANN. art. 38.23(a)(West 2005). The word "obtained" in the statute requires a causal connection between the illegality and the evidence sought to be excluded. *Roquemore v. State*, 60 S.W.3d 862, 872 (Tex.Crim.App. 2001). As the party seeking to exclude the evidence, Urias carried the burden to show that casual connection. *Pham v. State*, 175 S.W.3d 767, 774 (Tex.Crim.App. 2005)("Under Texas case law, it is required that a causal connection be established, and we hold that the defendant, as the moving party wishing to exclude the evidence, is responsible for the burden of proving this connection.").

Proof of this causal connection is distinct from the concept of "attenuation." The attenuation doctrine allows the State to argue that if the causal chain is indeed established, the chain may be broken by some intervening event. *State v. Jackson,* 464 S.W.3d 724, 731-33 (Tex.Crim.App. 2015), *citing Brown v. Illinois*, 422 U.S. 590, 603-04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). The State carries the burden under the attenuation doctrine. *Monge v. State*, 315 S.W.3d 35, 40 (Tex.Crim.App. 2010).

In this case, for whomever carried the burden, the evidence conclusively established that the illegal search had nothing to do with the videotaping of the field sobriety test, nor the statements made during the field sobriety test. The recording of the field sobriety test and what

followed, was not dependent of the search of the pickup. An undisputed fact on this record is that the video started recording well before the search ever began. The dash-cam saves to the device everything that occurred two minutes before the cruiser's flashers were engaged, and it continued to run until the trooper took Urias to jail. And because the video was already recording, the later search of the vehicle had no connection to the video, other that it happened to be included on a segment of the tape. There was no testimony or evidence from the video, that the search impacted the decision to perform the field sobriety test, or otherwise affected whether the events which followed were recorded or not. Nor do we find any later events on the video which relate to the search itself, other than a brief segment after the arrest where Trooper Jones poured out the whiskey and looked into a cooler in the back of the pick-up truck.[4]

We reach the same conclusion regarding the portion of the order suppressing any statements that Urias made after the search. We have carefully reviewed the audio portion of State's Exhibit Two and find no statements regarding the search of his pickup, or the whiskey bottle after the search was completed. All of the statements following the search up to the point of Urias' arrest, pertain to the trooper's instructions on performing the field sobriety test, or Urias' claim that he had a physical impairment which affected his ability to perform the test. None was in anyway related to the search, and thus not "obtained" as a result of the illegal search of the pick-up.[5]

---

[4] We do not fault the trial court's order to the extent it would exclude that portion of the tape, found between the time stamp 28:00 and 28:26.

[5] We express no opinions as to the post-arrest statements starting at time stamp 24:24 of the video up to time stamp 53:20 when a *Miranda* warning was first given. Although lack of *Miranda* warnings were raised in one of Urias' suppression motions, the issue was not developed below, and no fact findings address that distinct issue. We do note that several courts have rejected the notion that *Miranda* warnings are required prior to the administration of the field sobriety tests. *Pennsylvania v. Muniz*, 496 U.S. 582, 603, 110 S.Ct. 2638, 2653, 110 L.Ed.2d 528 (1990)(responses to carefully scripted instructions on performing the test were not testimonial); *Gassaway v. State,* 957 S.W.2d 48, 51 (Tex.Crim.App. 1997)(having driver count or recite the alphabet did not violate the privilege against self-incrimination); *Arthur v. State*, 216 S.W.3d 50, 54 (Tex.App.--Fort Worth 2007, no pet.).

11

Accordingly, we affirm the portion of the trial court's order suppressing the physical evidence seized during the search of Urias' vehicle, and the portion of the video (and audio) that depicts the search and results of the search. We reverse the portion of the order which also suppresses the video and audio depiction of what followed after the search up until the point of the arrest. We reverse the trial court's order regarding the balance of the video/audio depicting what transpired from the point of the arrest to the end of the tape, but only the extent the order to suppress was based on the illegal search of the vehicle. If Urias raises any other challenge to that segment of the video, the trial court can resolve that issue based on a proper record.

July 6, 2016

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

12